**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Annie MARTINEZ, a/k/a Annie Griego,
and Gloria Dominguez-Williams,
Defendants-Appellants.**

Nos. 83–2571, 83–2582 and 83–2583.

United States Court of Appeals,
Tenth Circuit.

Nov. 27, 1984.

Jason W. Kent of Poole, Tinnin & Martin, Albuquerque, N.M., for Annie Martinez, a/k/a Annie Griego, defendant-appellant.

Edwin Macy, Federal Public Defender, Albuquerque, N.M., for Gloria Williams, defendant-appellant.

Richard J. Smith, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty., and Stanley K. Kotovsky, Jr., Asst. U.S. Atty., Albuquerque, N.M., with him on the brief), for plaintiff-appellee.

Before SEYMOUR, BREITENSTEIN, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

By indictment, Gloria Williams was charged with six separate violations of 7 U.S.C. § 2024(b), namely the unauthorized acquisition of United States Department of Agriculture food coupons. She was also charged in two counts in the same indictment with possessing heroin with an intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Further, she was also charged in two additional counts with distributing heroin, also in violation of 21 U.S.C. § 841(a)(1).

In that same indictment, Annie Martinez, also known as Annie Griego, was charged with three different violations of 7 U.S.C. § 2024(b), the unlawful acquisition of food coupons, in two additional counts with the possession of heroin with an intent to distribute, and in two more counts with the distribution of heroin, in violation of 21 U.S.C. § 841(a)(1).

In a second indictment, returned some eight weeks after the first indictment, Martinez was charged with the possession of heroin with an intent to distribute, and the distribution of heroin, in violation of 21 U.S.C. § 841(a)(1). The separate counts were based on separate transactions.

The two indictments were consolidated for the purpose of trial, and a jury convicted both defendants on all counts. Each has appealed. Some background facts are essential to an understanding of the issues raised on appeal.

Gloria Williams and Annie Martinez, the latter testifying that Annie Griego was her correct name (she will hereinafter be referred to as Griego), were both employed as cocktail waitresses at the Casa Grande Lounge in Albuquerque, New Mexico. The Department of Agriculture determined to conduct an undercover investigation into the possible abuse of its food coupon program in the Albuquerque area. Food coupons, more commonly referred to as food stamps, are issued by the State Welfare Office to eligible applicants, and, once received, they may be only exchanged by the recipient for food items.

Russell Barrett, a special agent of the Department of Agriculture, was engaged in wide-ranging undercover investigation in and around Albuquerque and his *modus operandi*, at least in part, was to offer food stamps for sale at a sharply discounted price to persons who he thought might be inclined to purchase them. In pursuance of his investigation, Barrett went to the Waterbed Company in Albuquerque. Barrett had previously received information from the Albuquerque Police Department that certain employees at the Waterbed Company might be engaged in fencing or otherwise dealing in stolen property. Barrett spoke with Al Green, an employee at the Waterbed Company, about his possible purchase of a waterbed with food stamps, which Barrett said he had received from an unidentified employee in the local welfare office. Barrett was willing to exchange the coupons at a 60% discounted value, i.e., a book with a face value of $50 was offered for $20. Green declined Barrett's offer, but suggested that Barrett should contact Gloria Williams at the Casa Grande Lounge, Green opining that she might be interested in acquiring food stamps at a reduced price, and that Barrett could then acquire the waterbed and pay for it with the monies he received from Gloria Williams.

From the record it would appear that Agent Barrett had not really heard of Gloria Williams or the Casa Grande Lounge until his conversation with Al Green, the Waterbed Company employee, although there is some minor suggestion that Barrett had received information from the local Albuquerque police that unnamed employees at the lounge had dealt in stolen property. In any event, Barrett proceeded at once to the Casa Grande Lounge. In the meantime, Al Green apparently had a telephone conversation with Williams to the end that Williams was expecting Barrett.

Without going into unnecessary detail, Barrett had numerous meetings with Gloria Williams and Annie Griego, waitresses at the Casa Grande Lounge, extending from January 24, 1983, to April 25, 1983. Both Williams and Griego on repeated occasions acquired food stamps at a price which was 60% lower than face value. On March 15, 1983, when Barrett approached Griego about buying more food stamps, the latter said she had no money, and it was on that occasion that Barrett indicated he would accept packets of heroin in exchange for food stamps. Subsequently, the defendants did give Barrett small quantities of heroin in exchange for the food stamps.

## Speedy Trial

Both appellants argue that their trial did not comport with the 70-day requirement of the Speedy Trial Act. 18 U.S.C. § 3161(c)(1). Trial of the charges contained in the second indictment, wherein Griego was the only defendant, was tried well within the 70-day requirement. Hence, this particular argument concerns the charges contained against both defendants in the first indictment. In this latter regard, it is agreed that the 70-day period began to run on July 6, 1983, as to both appellants. A jury was selected on September 26, 1983, although opening statements and the calling of witnesses was delayed until October 25, 1983. Part of this delay was caused by the fact that after the jury had been selected on September 26, 1983, several of the jurors thus selected

had to be excused, for one reason or another, and replacement jurors had to be found.

■ The first question concerns the date when the defendants' trial "commenced" as that word is used in 18 U.S.C. § 3161(c)(1). The government contends that the trial commenced on September 26, 1983, when the jury was selected. The defendants contend that the trial did not commence until October 25, 1983, when opening statements were made. Under the chronology set forth above, we hold that defendants' trial commenced on September 26, 1983. *See United States v. Gonzalez*, 671 F.2d 441 (11th Cir.1982), *cert. denied sub nom., Gonzalez-Hernandez v. United States*, 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982).

From July 6, 1983, to September 25, 1983, represents 82 days. However, 18 U.S.C. § 3161(h)(1)(F) excludes from the time requirement delay caused by pre-trial motions, such delay to be computed from the date of filing of the motion or motions through the conclusion of the hearing on the motion of other prompt disposition of such. Williams filed several motions on July 19, 1983, and, even under her counsel's computation, these were not disposed of until August 2, 1983, which represents 14 excludable days, which would mean that her trial commenced 68 days after the Speedy Trial Act clock commenced to run.

Griego filed her pretrial motion on July 21, 1983, and again, under her own counsel's computation, such was not disposed of until August 2, 1983. Such constitutes 12 excludable days, which would bring her trial within the 70-day requirement.

There were other delays that arguably constituted excludable delays. For example, during the hearing held on defendants' pretrial motions on August 1 and 2, 1983, the defendants made an oral motion to produce documents then in possession of the prosecution. Briefs were thereafter submitted by the parties and the district court ruled on the motion to produce on August 11, 1983. Such would also appear to constitute excludable time. Be that as it may, in our view of the matter, there was

no violation in the instant case of either the letter or the spirit of the Speedy Trial Act.

### Outrageous Conduct

Both appellants argue that the conduct of Agent Barrett was so egregious and outrageous that the government should be barred from prosecuting them. Counsel suggests that the only reason Agent Barrett went to the Casa Grande Lounge to see, first, Gloria Williams, and then, as a result of this first contact, to see Annie Griego, was that they were at, or below, the poverty level and needed food stamps to help feed their families. Such is, possibly, one version of the evidence, but by no means the only one. The government's evidence indicates that the reason Agent Barrett went to the Casa Grande Lounge was the suggestion by Al Green, the employee at the Waterbed Company, that Gloria Williams might be interested in buying food stamps and that, with the proceeds of such a sale, Barrett could buy a waterbed from Al Green. In any event, Barrett did go to the Casa Grande Lounge and presented, first, Gloria Williams, and, later, Annie Griego with the opportunity to acquire food stamps at a substantial discount, and they both accepted. What prompted the defendants to thus acquire the food stamps is not really relevant.

■ What is virtually the self-same argument advanced here concerning outrageous conduct has been previously considered by us, and rejected, in a food stamp context. *See United States v. Salazar,* 720 F.2d 1482 (10th Cir.1983); *United States v. Burrell,* 720 F.2d 1488 (10th Cir. 1983); and *United States v. Biswell,* 700 F.2d 1310 (10th Cir.1983). In *Biswell,* the key government witness was the same Agent Barrett whose investigatory techniques are challenged by counsel here. We similarly reject here the contention that Agent Barrett's conduct was so outrageous as to amount to a denial of defendant's due process.

### Entrapment

■ Both Williams and Griego argue that there was entrapment as a matter of law. Griego particularly urges that, as to her, such was the case for all transactions subsequent to March 15, 1983, the date when she advised Barrett that she had no more money and he suggested that she pay for the food stamps with drugs. We disagree. The district court did not err in refusing to hold that there was entrapment as a matter of law as concerns either defendant. *See United States v. Gurule,* 522 F.2d 20, 23 (10th Cir.1975), *cert. denied,* 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976) ("if the evidence on the issue [of entrapment] is conflicting, the issue of entrapment should be submitted to the jury.")

The district court gave an entrapment instruction as concerns Gloria Williams, but refused to give any entrapment instruction in behalf of Annie Griego. The reason given by the district court for such differentiation was that Gloria Williams had taken the witness stand in her own behalf and had admitted all the essential elements of all the numerous crimes charged, whereas Annie Griego, when she testified, though she may have admitted the essential elements of some of the crimes charged, she did not admit all of the elements of the various crimes charged.

■ As stated, an instruction defining entrapment was given the jury in behalf of Gloria Williams. On appeal, Williams complains about the instruction given and argues that it didn't go far enough and that the instruction on entrapment should have clearly stated, within its own four corners, that the defense of entrapment having been raised, the burden was on the government to prove *no* entrapment. Such would undoubtedly be the preferable practice. See, *e.g., United States v. Corrigan,* 548 F.2d 879 (10th Cir.1977). Although Corrigan concerned the affirmative defense of self-defense interposed to an assault charge, we spoke as follows:

> From these cases the importance of avoiding any confusion concerning the burden of proof on an affirmative defense is apparent. The inclusion of a specific statement of the burden of proof

in the defense instruction is preferable. Its omission, however, is not reversible error *per se*. The question is whether the instructions, taken as a whole, adequately informed the jury that prosecution's burden of proof beyond a reasonable doubt applied to defendant's affirmative defense. We believe the instructions given in this case fall short of the standard....

*Id.* at 882.

As indicated, in *Corrigan* we reversed because the instructions, taken as a whole, did not adequately inform the jury that the prosecution's burden of proof beyond a reasonable doubt applied to the defendant's affirmative defense of self-defense. However, in the instant case, we believe that the instructions, taken as a whole, did adequately inform the jury as to the prosecution's burden of proof on the entrapment issue. *See United States v. Gurule*, 522 F.2d 20, 25 (10th Cir.1975), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976) (holding that in an entrapment instruction practically identical to the one in issue in the instant case, "it was clearly implicit ... that the burden of proof was placed upon the government.") In this connection, the jury was instructed that in order to convict Gloria Williams, the jury was required to find beyond a reasonable doubt that she was predisposed to commit the crime charged, and, by another instruction, the jury was further advised that the prosecution had the duty of proof beyond a reasonable doubt. We are of the definite view that the jury was not confused on the matter.

As stated, the district judge refused to instruct the jury regarding entrapment as concerns Annie Griego. The basis for the district judge's holding was his belief that Griego did not fully admit commission of the crimes charged and that on cross-examination, in particular, she said, "I don't know" and "I don't remember" too often. The district judge concluded by stating that he must make a decision on the matter, and that, on appeal, "the record will either support it or not support it." We believe the record does not support the ruling of the district judge.

■ We have read Annie Griego's testimony carefully, and are of the view that it is sufficient to establish her admission of guilt. She admitted obtaining food stamps and paying therefor, first, with money and then drugs. The fact that on cross-examination she had only a hazy recollection of certain details, most of which were, in our view, on unessential matters, does not negate the admissions made in her direct testimony. We conclude that it was reversible error not to give an instruction on entrapment in behalf of Annie Griego. Indeed, without such an instruction, Annie Griego was in a rather untenable position, having taken the stand and admitted her involvement. We therefore hold that where the defense of entrapment has been raised and a defendant has substantially admitted the essential elements of the crime charged, uncertainty by the defendant concerning immaterial details will not defeat a request by the defendant for an entrapment instruction. *See United States v. Smith*, 629 F.2d 650, 652 (10th Cir.1980), *cert. denied*, 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 291 (1980) (trial court had given entrapment instruction where it believed defendant had "tacitly admitted" the offense).

### Roberta Lorenzo

■ Roberta Lorenzo was also employed as a cocktail waitress at the Casa Grande Lounge. On cross-examination, Agent Barrett, the government's key witness, was asked if he had dealt with any other employee at the lounge besides Gloria Williams and Annie Griego. He answered that he had not. The matter, as we read the record, was dropped, for the moment at least, in the sense that there were no follow-up questions. However, when the defendants were later putting on their case, they sought to call Roberta Lorenzo as a witness and stated that she would testify that Agent Barrett had in fact tried to get her to buy food stamps and that she refused. The district court sustained the

government's objection to the proffered testimony. Defendants assert that Lorenzo's testimony would have contradicted Agent Barrett's testimony that he had only dealt with Williams and Griego at the lounge and that such would have impeached Barrett and substantiated the defendants' claim of outrageous conduct and entrapment. We are not in accord with this line of reasoning. To impeach in the manner sought by these defendants, the proffered testimony must relate to a material matter, and not pertain to a purely collateral or immaterial matter. Whether Agent Barrett ever dealt with Lorenzo, or not, has little to do with his admitted dealing with the two defendants. Thus, we hold that the trial court did not abuse its discretion in refusing to allow Lorenzo to testify. *See United States v. Martinez,* 487 F.2d 973, 977 (10th Cir.1973) ("the materiality and relevance of proffered evidence resides in the sound discretion of the trial court.").

#### Jury Selection

■ As mentioned, the jury was selected on September 26, 1983. No objection was made to that selection procedure. Subsequently, in mid-October, 1983, intervening events required that two jurors be excused, and a third juror previously selected declined to serve on religious grounds. The case was then adjourned until afternoon to permit the clerk to summon a panel of ten additional prospective jurors from which the necessary twelfth juror and two alternate jurors would be chosen. Gloria Williams objects to the manner in which this additional panel was summoned. Because of geographical considerations, the additional jurors came from Albuquerque, Belen, Bernalillo, and Los Lunas and none were summoned from outlying counties. Such violated local rules, argues Williams. We are not in accord with this argument. Any error was at most technical, and completely non-prejudicial in nature.

■ At oral argument, there was a suggestion by Williams' counsel that the sentence imposed was too harsh. We note that the sentence imposed was within the statutory limits. We are not at liberty to reduce such a sentence, although the district court, after receipt of our mandate, may do so upon proper motion by the defendant under Fed.R.Crim.P. 35(b). *See United States v. Smith,* 650 F.2d 206, 208 (9th Cir.1981) ("the function of Rule 35(b) is 'simply to allow the district court to decide if, on further reflection, the original sentence now seems unduly harsh.' ").

The judgment as it pertains to Williams is affirmed.

The judgment as it pertains to Annie Martinez, also known as Annie Griego, is reversed and the case is remanded for further proceedings.