UNITED STATES of America,
Plaintiff-Appellee,

v.

Billy RIVERA, Defendant-Appellant.

No. 85–1081.

United States Court of Appeals,
Tenth Circuit.

Dec. 5, 1985.

Peter Schoenburg, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Presiliano Torrez, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and Larry Gomez, Asst. U.S. Atty., Albuquerque, N.M., were also on brief) for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and MOORE, Circuit Judge, and CROW, District Judge *

HOLLOWAY, Chief Judge.

In this criminal action defendant Billy Rivera was convicted of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, intentional distribution of cocaine, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and unlawful, knowing or intentional use of a telephone to facilitate distribution of cocaine, 21 U.S.C. § 843(b). At trial, defendant admitted he committed each of the acts alleged in the three-count superseding indictment but asserted the sole defense that the Drug Enforcement Agency Special Agent who ultimately arrested him entrapped him into committing the acts. On appeal of his convictions on all three counts, defendant asserts several grounds for reversal.

I

Considered in the light favorable to the jury's verdict, the Government proof tended to show the following facts.

On December 31, 1983 at a restaurant in Albuquerque, New Mexico, defendant sold four grams of cocaine to special Agent Ismael Fuentes of the Drug Enforcement Agency (DEA). Fuentes posed as "Jesse," a wealthy investor interested in investing in legitimate real estate deals who also wanted to purchase a large quantity of cocaine. Before meeting defendant,

---

* The Honorable Sam A. Crow, of the United States District Court for the District of Kansas, sitting by designation.

Fuentes in mid-September 1983 met Jerry Jaramillo, an alleged co-conspirator and friend of defendant who dealt in drugs.[1] Fuentes testified that in a conversation on December 13, 1983 after numerous meetings, Mr. Jaramillo allegedly told him that defendant was one of his three sources for cocaine. Jaramillo introduced Fuentes to defendant on December 21. On December 28, 1983 defendant telephoned Fuentes to arrange to meet with him to sell the cocaine.

On December 31, 1983, defendant met Jaramillo and Fuentes at the Albuquerque restaurant and, that day, defendant and Jaramillo transferred the cocaine to Fuentes. After further contacts with defendant on January 2, 3, and 5, 1984 Fuentes arrested him on January 6.

At trial, defendant admitted that he assisted Jaramillo in possessing cocaine and passing cocaine to Fuentes on December 31, 1983. Defendant also admitted he made the phone call on December 28, 1983 to set up the cocaine transaction. However, defendant claimed that Fuentes entrapped him into making the cocaine sale by luring him with promises of large real estate investments.

Defendant claims he is a legitimate businessman who deals in new and used Corvettes and real estate. Defendant also says that when Jaramillo first urged him to meet with "Jesse" to discuss a drug transaction, defendant declined to become involved. It was only when Jaramillo related to defendant on December 20 Jesse's interest in purchasing a Corvette and some condominiums from defendant and in beginning a legitimate business relationship that defendant agreed to meet with Fuentes. Defendant further claims that, when he told Jesse he had connections in Miami and Pittsburgh, he lied to retain Jesse as a client and that, when Jesse asked him to sell him a sample of cocaine, he had to go to a bar to obtain the sample. Defendant says he sold Jesse the cocaine to keep from losing him as a client because Jesse's business represented a once-in-a-lifetime opportunity.

The trial court permitted defendant to plead entrapment on Counts I and II of the indictment, but refused to permit him to assert the defense on Count III because defendant testified during cross-examination that he "did not intend to commit a crime" when he used the telephone on December 28 to set up his December 31, 1983 meeting with Fuentes. The jury convicted defendant on all three counts. The court later sentenced defendant to a merged six year prison sentence and an eight year special parole term on Counts I and II. On Count III, defendant received a four year prison sentence, to run concurrently with the merged six year sentence under Counts I and II.

## II

### *The trial court's admonition of counsel during his opening statement*

■ As his first ground for reversal defendant says that the trial court committed prejudicial error when it admonished his counsel in front of the jury not to make statements the trial judge felt were appeals to sympathy and prejudice. We conclude the trial judge committed no reversible error.

■ Regulation of the scope, extent and timing of defense counsel's opening statement rests within the district court's sound discretion. *United States v. Freeman*, 514 F.2d 1184, 1192 (10th Cir.1975). "The function of the defendant's opening statement is to enable him to inform the court and jury what he expects to prove, and the trial court may properly exclude irrelevant facts." *Id.* at 1192. The trial judge has an obligation to keep the trial on track and to prevent unfair appeals to sympathy or prejudice.

The trial judge admonished counsel he should not attempt to generate bias, sympathy or prejudice during the trial but allowed him to tell the jury where defendant grew up and who his family members

---

1. In an earlier indictment, the Government named Mr. Jaramillo as a codefendant.

were. In his opening statement, defense counsel detailed defendant's family background and his work history, including the sale of motorcycles and automobiles. II R. 33. Defendant's counsel then sought to compare defendant with other Hispanics in his age group with similar backgrounds, and to point out how defendant had succeeded by "pulling himself up by his boot straps." The court interrupted defendant's attorney's opening statement, advised him to go onto something else, and cautioned him about sympathy and prejudice. II R. 33. The single admonition in the jury's presence was brief.

The trial court's admonition to defense counsel in his opening statement was not an abuse of discretion.

### III

### *Jaramillo's Out of Court Statement Identifying Defendant as One of his Cocaine Sources*

Defendant strenuously argues that the trial court improperly admitted, over a hearsay objection, Fuentes' testimony relating a statement by Jaramillo identifying defendant as a source of cocaine for Jaramillo. II R. 84.[2] Defendant argues that the trial judge improperly failed to follow the preferred order of proof to permit admission of the statement, that the court improperly made its determination of admissibility before giving defendant an opportunity to present evidence on the conspiracy question, and that the court's findings on conspiracy and the admissibility of the statement were not supported by the evidence.

2. Fuentes' testimony, together with defense counsel's objection to the hearsay defendant complains of, was as follows:
   Q. Can you tell us, did you have a meeting with Mr. Jaramillo?
   A. Yes, sir, I did.
       \*     \*     \*     \*     \*     \*
   Q. At approximately what time?
   A. It was pretty close to midnight, December 13th.
       \*     \*     \*     \*     \*     \*
   Q. And during the course of the discussion, can you tell us whether or not Mr. Jaramillo identified his cocaine source?

### A

### *The order of proof on the conspiracy issue and the timing of the findings*

■ It is convenient to consider both the defendant's complaints about the order of proof and the timing of the trial judge's findings on conspiracy together. We conclude there was no reversible error in either respect.

During his testimony, Special Agent Fuentes described several meetings he had in late 1983. He testified that on December 13 Jaramillo invited Fuentes to Santa Fe. When Fuentes was asked what the purpose of the meeting was, defense counsel objected on hearsay grounds, and the trial judge cautioned that the Government should approach the testimony in a different way to avoid hearsay. II R. 83–84. Fuentes then testified that a meeting occurred on December 13 at the Ramada Inn in Santa Fe with Jaramillo, Special Agent Kevin Small, and Fuentes being present at the motel.

At this point, Government counsel asked Fuentes whether Jaramillo identified his source of cocaine. Defense counsel again objected on hearsay grounds. The trial judge said that the testimony would go to the question of a predicate for the testimony about the meeting and its purpose, and overruled the objection. II R. 85. Fuentes testified that Jaramillo advised him of 3 sources and identified defendant Rivera as one of the sources for Jaramillo's cocaine. The trial judge then directed that the jury be taken from the courtroom and the jury departed.

  A. Yes, sir, he did.
  Q. And can you tell us who he identified?
  MR. SCHOENBURG: I am going to object again. It's hearsay. This is the same information related by a party not in Court today.
  THE COURT: It goes to the question of the predicate, as he has indicated. I'm going to hear his answer. Overruled.
  A. Mr. Jaramillo advised me of three sources, and identified Billy Rivera as one of the sources for cocaine.
II R. 84–85.

The trial judge next requested statements by counsel for both sides on the hearsay objection. He stated that ultimately the hearsay statements would come in, that the predicate had been laid according to the court's notes, and that he wanted to know whether the Government relied on the co-conspirator theory. Government counsel confirmed that this was the case and that part and parcel of the conspiracy was the identification and introduction by Jaramillo of the defendant Rivera to Special Agent Fuentes; that through the testimony of Fuentes it would be shown that on December 21 Jaramillo did introduce the defendant to Fuentes and following that Jaramillo continued to be involved in the setting up of actual distribution of cocaine. II R. 85–86.

Still in the absence of the jury, the judge said that on the basis of cases before him, he would ask immediately that they move on to identification of the source, Rivera. The judge cited *United States v. Petersen,* 611 F.2d 1313 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980), and *United States v. Andrews,* 585 F.2d 961 (10th Cir.1978). The judge found that there was a separate basis for the court to hold there was a conspiracy, citing the testimony of Maestas.[3] He stated he thought there was a basis for finding a conspiracy did exist; that the declarant and the defendant were members of it; and that Jaramillo's statement (which identified one of Jaramillo's cocaine sources) was made during the course and in furtherance of the conspiracy. These would be the court's findings, the judge added, subject to identification of the introduction of Jaramillo, Rivera and Fuentes. II R. 86.

Immediately after the jury returned, Fuentes testified that Jaramillo was present at the December 31 meeting at the 4–B's Restaurant. II R. 89.

After the Government rested, further findings were stated by the trial judge. After overruling a motion for judgment of

acquittal on the basis of outrageous conduct, III R. 302, the judge stated that with reference to the hearsay and the co-conspirator hearsay exception, on the basis of the preponderance of the evidence, independent of the statements themselves, the court was satisfied that a conspiracy did exist; that the declarant (Jaramillo) and the defendant Rivera, against whom the conspirator's statement was offered, were members of that conspiracy, and that the statement was made during the course of and in furtherance of the conspiracy. III R. 303–04. Defense counsel made no objection to the timing of these latter findings and the defense then proceeded with its case as soon as the jury returned to the courtroom. III R. 304–05.

We are not persuaded by the defendant's objections to the procedure on the order of proof or the timing of the findings. In *United States v. Petersen,* 611 F.2d at 1330, we stated that although we determined it was preferable, whenever possible, to require the Government to first introduce independent proof of the conspiracy and subsequently to establish the connection of the defendant with it before admitting hearsay declarations, there was an exception recognized where it was not reasonably practicable to require the showing to be made before admitting the evidence; in such a case the trial judge could admit the hearsay statements, subject to their being connected up later. *See also United States v. James,* 590 F.2d 575, 582 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). Here the trial judge referred to *Petersen* when he was making his preliminary findings and was obviously aware of its exception to the required order of proof. The Government attorney had outlined the step-by-step proof that would be offered (the proof of the December 21 meeting, introduction of defendant to Fuentes by Jaramillo, and Jaramillo's continued involvement in setting up the cocaine sale, II R. 86, 88). We are

---

**3.** Maestas had testified that on December 31 the defendant was at the 4–B's Restaurant with Fuentes and another person prior to the time

Maestas and Fuentes did a field test on a packet Fuentes had obtained. II R. 45–52.

satisfied that the trial court had a reasonable basis for allowing an exception to the preferred order of proof in this instance, and did not abuse his discretion in doing so. *United States v. Harenberg,* 732 F.2d 1507, 1513 (10th Cir.1984).

Furthermore, as noted, the trial court also made the later statement of findings that on the totality of the record and the Government's presentation, a conspiracy did exist, that the declarant and defendant were members of it, and that the statement of Jaramillo was made during the course and in furtherance of the conspiracy. III R. 304.

On consideration of the record and the findings of the trial judge initially and after the Government rested, we see no reversible error in the procedure followed and the timing of the findings. As mentioned earlier, there was no objection by the defense counsel when the later findings were made after the Government rested and the defendant instead proceeded immediately with his case. In *Petersen,* 611 F.2d at 1330, we stated that regardless of whether the proof had been made in the preferred order or the statement was admitted subject to later connection, "on appropriate motion" at the conclusion of all the evidence further findings were required. In the instant case no such motion was made at the conclusion of all the evidence. In these circumstances we do not feel that the defendant can complain as to the *timing* of the ultimate findings stated by the judge after the Government rested. Defendant did make proper objections challenging the actions of the trial judge in allowing an exception to the preferred order of proof of a conspiracy, but we find no reversible error in that regard.

In sum, we are satisfied there was no reversible error in the order of the taking of the evidence or the timing of the findings.

**B**

*Sufficiency of the evidence to support the findings*

The gist of defendant's objections to the findings is that there was insufficient evidence to establish a conspiracy between defendant Rivera and Jaramillo to distribute cocaine, particularly with respect to the December 13, 1983 time when Jaramillo's statement was made.

Under Rule 104 of the Federal Rules of Evidence the district judge must determine whether the prosecution has shown by a preponderance of the evidence, independent of the statement itself, that a conspiracy existed, that the co-conspirator and the defendant against whom the statement is offered were members of it, and that the statement was made during the course of and in furtherance of the conspiracy. *See* Rules 104(a) and 801(d)(2)(E), Federal Rules of Evidence; *Petersen,* 611 F.2d at 1330–31. Here the evidence to support the findings included the testimony of Detective Ault of the Santa Fe Police Department that on December 21 defendant was conducting countersurveillance to insure that no law enforcement personnel were observing a meeting that day between Jaramillo and Fuentes, (II R. 56–57, 61), Fuentes' testimony about his contact with Jaramillo on December 20 when Jaramillo invited Fuentes to Santa Fe for the purpose of introducing him to Rivera so that Fuentes could make a purchase of a sample of cocaine, (II R. 90), and Fuentes' testimony that Jaramillo made the introduction on December 21 (II R. 90). Fuentes identified defendant in court as the person who was in that December 21 meeting. II R. 90–91. The trial judge also referred to the transcripts containing defendant's taped comments indicating that he wanted to be in on a scheme to launder drug money. Conversations between Rivera and Fuentes on December 21 showed an acquaintance already existed between Rivera and Jaramillo. Non-drug Exhibit C at 9, 14, 41. The record thus supports the inference that defendant had been involved with Jaramillo in drug related activities for some time.

We conclude that the record contains substantial evidence to support the trial court's findings on the co-conspirator ex-

ception and reject the contention that reversible error was committed in the findings made.

## IV

### *The refusal of an entrapment instruction on Count III*

■ Defendant claims error in the refusal of the trial court to submit an entrapment instruction on Count III on the ground that the defendant in cross-examination made a statement he did not intend "to commit a crime" when he called Special Agent Fuentes on December 28, 1983, to set up a December 31 meeting. Defendant says that he had substantially admitted all the acts constituting the offense charged in Count III, that he did not violate the requirements of the rule that he must admit the offense to obtain an entrapment instruction, and that denial of his theory of defense was error. We must agree.

The trial judge announced after the trial concluded that he was not submitting an entrapment instruction on Count III because of a statement that the defendant had made during cross-examination. There was a statement made by defendant that he "didn't intend to use the telephone to commit a crime."[4] Nevertheless, we must agree that on the basis of this one statement pin-pointed by the trial court, the defendant should not have been deprived of his entrapment defense.

We have held that where entrapment has been raised and the defendant has substantially admitted the essential elements of the crime charged, uncertainty by the defendant concerning immaterial details will not defeat a request for an entrapment instruction. *United States v. Martinez,* 749 F.2d 601, 606 (10th Cir.1984). We are

mindful that an essential element of the offense charged in Count III was the knowing or intentional use of the telephone to facilitate the distribution of cocaine. However, considering the conduct of the defense as a whole, we cannot agree that defendant was properly denied an entrapment instruction on Count III.

We must look at the entire record of the defense case to determine whether defendant substantially admitted the essential elements of the crime charged. In his opening statement the defense attorney summarized the circumstances surrounding the critical December 31, 1983 transaction, admitting the calls back and forth in which Jaramillo and defendant agreed to go to Albuquerque to give Fuentes a sample of cocaine. Indeed, defense counsel stated that the day the cocaine was transferred, Rivera was driving a car with Jaramillo in the back seat of the car, that Fuentes was in the front seat, and that *"Billy [Rivera] knew it was happening and, in fact, helped to set it up with a phone call."* II R. 38–39. (Emphasis added).

Then on direct examination at the outset of his testimony, defendant admitted the elements of the offense charged in Count III. He admitted that on December 31, 1983 at the restaurant he assisted Jaramillo in passing cocaine to Fuentes, that he helped Jaramillo possess the cocaine that he passed to Fuentes, and that two days before on December 28, he made a phone call. He was asked by his own counsel whether on December 28 he made "a phone call to help set up that passing of cocaine between Mr. Jaramillo and Mr. Fuentes". Unequivocally, defendant Rivera replied "Yes, I did." III R. 305–06. Finally, in closing arguments the Government stated

---

4. In context, the line of questioning reads:

Q. And with regard to the December 28 telephone conversation, you discussed getting cocaine delivered to Agent Fuentes in that conversation, did you not?

A. Like I said, he kept asking me to get him some. It's possible that on that day he might have asked me again, yes.

Q. And you intended to use that telephone to do that, to accomplish that, did you not?

A. Well, we were negotiating—all our negotiations were pretty much—half of them were on the phone, the other half were in personal appearances.

Q. So you intended to use a telephone to negotiate that transaction?

A. I didn't intend to use the telephone. I didn't intend to use the telephone to commit a crime.

IV R. 443.

that there was no dispute that the first two counts occurred and that with regard to Count III, "there is no dispute that that occurred." IV R. 514. In no respect did the closing argument by defense counsel dispute the elements of Count III being shown, or place any reliance on the single statement in cross-examination referred to by the trial judge.

The law is well-settled in this circuit that if the defendant denies the commission of the crime charged, the defense of entrapment is not available to him. *Munroe v. United States*, 424 F.2d 243, 244 (10th Cir. 1970) (en banc); *see also United States v. Mora*, 768 F.2d 1197, 1198–99 (10th Cir. 1985) (per curiam). We have, however, recognized that the defense is available where a defendant has substantially admitted the essential elements of the crime charged and he was only uncertain about immaterial details. *United States v. Martinez*, 749 F.2d 601, 606 (10th Cir.1984). The element of intent is not immaterial, of course, but the single statement on cross-examination is more in the nature of technical confusion about the defendant's position overall, rather than a denial of the essential element of knowing or intentional use of the phone to facilitate the distribution of cocaine. Having made such a broad admission about the phone call as he did at the outset of his testimony and in his attorney's opening statement, we feel it was too technical to deny the entrapment defense because of the remark on cross-examination. As in *Martinez*, without an entrapment instruction, the defendant "was in a rather untenable position, having taken the stand and admitted [his] involvement." 749 F.2d at 606.

We hold that it was error to deny an instruction on the entrapment defense to Count III, and the conviction on that Count must be set aside.

## V

### *The claim of error in denial of acquittal sought on grounds of outrageous governmental conduct*

Defendant Rivera complains that the district court erroneously refused to grant a judgment of acquittal which defendant sought on the ground of outrageous governmental conduct. He points to the extensive drug distribution network that Fuentes acknowledged the Government established in Texas, where undercover agents posed as associates of Columbians and Cubans; he also complains of Fuentes' extravagant proposals to buy defendant's Corvettes and condominiums at inflated prices, and his proposal to use defendant's real estate services to find a location for a club and that they become partners in the club. He says these combined actions of the Government's agents played the controlling role in causing defendant to distribute cocaine to the agent, in violation of due process principles. Appellant's Brief in Chief 29–30.

The Supreme Court has stated that it "may someday be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction..." *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973). We are not persuaded, however, that the actions complained of here constitute such a constitutional wrong. Undercover activities are "a recognized and permissible means of investigation..." *Russell*, 411 U.S. at 432, 93 S.Ct. at 1643; *United States v. Warren*, 747 F.2d 1339, 1341 (10th Cir. 1984). The circumstances involved in *United States v. Szycher*, 585 F.2d 443 (10th Cir.1978), were somewhat similar to this case. There agents were presented as millionaires and a Government informer posed as the son of a prominent actor. We rejected a similar outrageous conduct claim there. Here we are also convinced that the undercover activities did not violate due process standards of governmental conduct.

We find no error in the denial of a judgment of acquittal and the rejection of the outrageous conduct claim by the trial judge.

## VI

*Defendant's claim that his entrapment defense on Counts I and II was prejudiced by the denial of the entrapment defense as to Count III*

██ Defendant claims that his entrapment defense as to Counts I and II was prejudiced by the refusal of an entrapment instruction on Count III, requiring reversal of his Count I and II convictions.

Defendant says we must reverse his conviction on Counts I and II since his entire case before the jury was based on the entrapment theory as to all counts; that the jury must have concluded the defense was not submitted as to Count III because the court had decided that there was no Government inducement as of December 28—the time of the phone call—or that defendant was predisposed to commit the offense anyway, or both; and that if a juror logically concluded the judge had determined there was insufficient inducement on December 28, 1983 to entrap defendant into making the call, it was unlikely the juror would find enough inducement on December 31, 1983 to carry out the very transaction discussed, especially since there was no evidence of additional inducement between those dates by law enforcement agents. Thus the entrapment defense as a whole to Counts I and II was prejudiced so that the convictions on those charges must be reversed. Appellant's Brief in Chief 35–37.

We are not persuaded by the argument. While the circumstances here give some strength to the factual contention, the fact is that nevertheless the trial judge did clearly submit an entrapment instruction as a theory of defense to Counts I and II. There was no comment by the trial judge in the charge that he found no inducement of the defendant in connection with Count III. The judge said in the opening of the entrapment instruction that "[t]he defendant asserts that he was a victim of entrapment as to the offenses charged in Count One and two of the indictment." IV R. 548. At the conclusion of the entrapment instruction the judge stated:

Just as it is your responsibility to consider each offense and the evidence applicable thereto separately, it is likewise your responsibility to consider the evidence concerning entrapment, as to the offenses charged in Count One and Two of the indictment separately.

You may not consider the defense of entrapment with respect to the offense charged in Count Three of the indictment.

IV R. 551. No articulation of the judge's views on entrapment as a defense to Count III was expressed to the jury. And the entrapment defense remained clearly submitted as to Counts I and II.

"Our theory of trial relies upon the ability of a jury to follow instructions." *Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954). In the absence of special considerations such as, for example, the consideration of a coerced confession, *see Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), there is generally a presumption that juries will follow instructions. *Watkins v. Sowders,* 449 U.S. 341, 347, 101 S.Ct. 654, 658, 66 L.Ed.2d 549 (1981); *see also Chase v. Crisp,* 523 F.2d 595, 600 n. 5 (10th Cir. 1975), *cert. denied,* 424 U.S. 947, 96 S.Ct. 1418, 47 L.Ed.2d 354 (1976). The trial judge plainly charged the jury here that they should consider each count separately. IV R. 557.

"We will not impute to juries the inability to correctly understand the totality of their instruction ... nor will we impute nonfeasance to a jury in the form of a disregard of the Trial Court's instructions..." *United States v. Pennett,* 496 F.2d 293, 296 (10th Cir.1974). Accordingly we are not persuaded that the error in denying the entrapment instruction as to Count III requires the reversal of Counts I and II.

## VII

*Defendant's claim of error in the admission of the tapes and transcripts of Fuentes' telephone conversations with defendant containing conversations in Spanish*

■ Defendant contends that the admission of the tapes containing telephone conversations between Special Agent Fuentes and defendant and the transcripts of them was error. More specifically, he says that submission of the tapes to the jurors placed the one Spanish-speaking juror in the position of an expert on translation of the almost entirely Spanish conversations in the tapes; that the jurors after approximately fifteen minutes of deliberation requested the tapes as well as the transcripts; that they thereafter deliberated for nearly five hours; and that the jurors had been made aware since early in the trial that one of their number was fluent in Spanish, with the result that the other jurors might have given undue weight to the Spanish-speaking juror's interpretations of the taped conversations. Appellant's Brief in Chief 39–41.

We are not convinced that any reversible error occurred. The jurors had the transcripts in English which each of them could examine. It is true that the jurors had the tapes and they were given equipment to play them, (IV R. 575), that the inflections and emphasis in the conversations may have been significant, and that the Spanish-speaking juror had the unique advantage of understanding the conversations in Spanish and the opportunity to relay and interpret the discussions to the jurors during their deliberation. However, with each juror having access to the transcripts, we are not persuaded that any prejudice should be presumed. Individual jurors bring different skills and backgrounds to the deliberations of juries in most cases. The circumstances involved here are not indicative of any impropriety. We "must not permit the integrity of the jury to be assailed by mere suspicion and surmise; it

is presumed that the jury will be true to their oath and conscientiously observe the instructions and admonitions of the court." *Baker v. Hudspeth,* 129 F.2d 779, 782 (10th Cir.), *cert. denied sub nom., Baker v. Hunter,* 317 U.S. 681, 63 S.Ct. 201, 87 L.Ed. 546, *reh. denied,* 317 U.S. 711, 63 S.Ct. 264, 87 L.Ed. 566 (1942) *and* 318 U.S. 800, 63 S.Ct. 767, 87 L.Ed. 1164 (1943).

We find no merit in the claim of error in connection with the admission of the tapes and transcripts in these circumstances.

## VIII

*The claims of error in the entrapment instruction*

Defendant claims that the entrapment instruction given was confusing because it could be understood to shift the burden of production and proof to the defendant. He further complains that it gave the jury a list of law enforcement actions which the law considers proper.

In determining whether the entrapment instruction given with respect to Counts I and II was proper we must, of course, view the charge as a whole. And while a defendant is entitled to an instruction on his theory of defense if there is evidence supporting it, the court need not use a defendant's proposed instruction if the charge given adequately covers the issues of the case. *United States v. Kapnison,* 743 F.2d 1450, 1461 (10th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2017, 85 L.Ed.2d 299 (1985).

■ We are not persuaded that the instruction placed the burden of proof of inducement on the defendant. Defendant says that the trial judge rejected a proper instruction which had been proposed and instead submitted one requiring the jury to consider first whether defendant had produced "some evidence" of "inducement," citing the entire entrapment instruction, R. 200–203. Appellant's Brief in Chief 42–43. The portion of the charge apparently complained of is produced in the margin.[5] Es-

---

**5.** The portion of the charge on entrapment which apparently is complained of read as fol-

lows:

sentially it said that if the jurors found evidence "in this case" that the defendant was induced to commit the offense, then they must go on to consider whether he was predisposed to do so and whether he was ready and willing to commit a crime such as was alleged whenever an opportunity was afforded. The instruction merely recognized that the evidence of inducement may come from either party, and that the evidence "in this case" may show such inducement. We find no portion of the charge which improperly placed the burden of proof of the entrapment defense on the defendant. Recognizing that there must be some evidence of inducement for the defense to be considered was not error.

▮▮▮ Further, defendant says that the trial judge inappropriately included a list of law enforcement actions which are proper. The portion of the instruction complained of is again produced in the margin.[6] While the instruction should not refer in detail to conduct of specific sorts involved in the case and give approval to it, we do not feel that was the effect of the instruction here. A more general guide on such permissible conduct in terms similar to those used in *Russell,* 411 U.S. at 432, 434, 93 S.Ct. at 1643, 1644 and in the instruction upheld in *United States v. Szycher,* 585 F.2d 443, 450 n. 7 (10th Cir.1978), would have been preferable, but we do not find reversible error in the instruction given here in this respect.

▮▮▮ In addition, defendant argues that nowhere in the instructions was the jury told that the Government had the entire burden to prove that the defendant was not entrapped. We agree that such a specific statement in the entrapment instruction would undoubtedly be preferable. *United States v. Smegal,* 772 F.2d 659, 660 (10th Cir.1985). Nevertheless the instructions as a whole did not constitute reversible error in this regard. The general discussion of the burden of proof told the jury that

> The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must acquit him. Thus while the Government's burden of proof is a strict and heavy one, it is not necessary that the defendant's guilt be proved beyond all possible doubt. *It is only required that the Government's proof exclude any reasonable doubt concerning the defendant's guilt.*

IV R. 541. (Emphasis added).

In the concluding portion of the entrapment instruction the trial judge stated:

> In summary, then, if you find no evidence that the Government induced the defendant to commit a crime with which he is charged here, there can be no entrapment. On the other hand, if you find some evidence that the defendant was induced to commit an offense with which he is charged, you must then go on to consider if the defendant was predisposed to commit such an offense.
>
> *If you find beyond a reasonable doubt that the defendant was predisposed to commit such an offense, then*

---

If you should find from the evidence in this case that before an alleged offense occurred, Government officers or their agents did no more than offer the defendant the opportunity to engage in criminal conduct, there is no entrapment.

On the other hand, if you find evidence in this case that the defendant was induced to commit an offense charged, you must go on to consider whether or not the defendant was predisposed to commit that offense; that is, whether he was ready and willing to commit a crime such as is alleged in the indictment whenever an opportunity was afforded.

IV R. 549.

**6.** The instruction stated in part:

Law enforcement officials are not precluded from utilizing artifice, stealth and strategies such as the use of decoys and undercover agents in order to apprehend persons engaged in criminal activities provided that they merely afford opportunities or facilities for the commission of the offense by one predisposed or ready to commit it.

They may properly make use of undercover operations in which they assume false names and false appearances. They may properly assume the roles of members of criminal organizations. They may properly offer to purchase or exchange contraband, either directly or through another, from a person suspected of engaging in the illicit sale of contraband. IV R. 548–49.

*you should find that the defendant was not a victim of entrapment.*

*However, if the evidence in this case leaves you with a reasonable doubt whether the defendant was predisposed to commit an offense, then you must find him not guilty of the offense.*

IV R. 550–51. (Emphasis added).

We are satisfied that the charge as a whole shows that there was no reversible error in connection with the placing of the burden of proof. In similar circumstances, we have rejected the claim that an entrapment instruction was reversible error. *See United States v. Marty Martinez,* 776 F.2d 1481, 1484 (10th Cir.1985); *United States v. Smegal,* 772 F.2d 659, 660–61 (10th Cir. 1985); *United States v. Annie Martinez,* 749 F.2d 601, 605–06 (10th Cir.1984); *but compare United States v. Corrigan,* 548 F.2d 879 (10th Cir.1977).

In sum, we are not persuaded that there was reversible error in the entrapment instruction given.

## IX

### *Conclusion*

We conclude that there was no error requiring the reversal of the convictions and sentences on Counts I and II, and with respect to those counts, the judgment is affirmed. However, for the reasons stated, the conviction on Count III must be reversed and with respect to that Count, the cause is remanded for further proceedings.

IT IS SO ORDERED.