UNITED STATES of America,
Plaintiff-Appellee,

v.

Lee Travis ANDREWS,
Defendant-Appellant.

Nos. 84–1458, 85–1249.

United States Court of Appeals,
Tenth Circuit.

April 30, 1986.

Stephanie J. Griffin, Denver, Colo., for defendant-appellant.

Mark D. Jarmie, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and Presiliano A. Torrez, Asst. U.S. Atty., on brief), Albuquerque, N.M., for plaintiff-appellee.

Before BARRETT and SEYMOUR, Circuit Judges, and GREENE,* District Judge.

BARRETT, Circuit Judge.

In these consolidated appeals, Lee Travis Andrews contends that the district court erred in denying his motion to extend the time for filing a notice of appeal, that the proceedings below violated the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.* (1982) (the Act), and that his guilty plea was rendered involuntary by his failure to receive effective assistance of counsel.

## I.

### BACKGROUND

Andrews and others were originally charged in a three count indictment with conspiracy to transport stolen goods in interstate commerce (Count I), transporting stolen meat in interstate commerce (Count II), and transporting the stolen trailer truck carrying the meat (Count III). Represented by appointed counsel, Andrews

---

* The Honorable J. Thomas Greene, United States District Judge, District of Utah, sitting by designation.

was arraigned on October 6, 1983, and pled not guilty. That same day the Government filed a superseding indictment charging Andrews with the same three counts contained in the original indictment and adding a new charge of theft of meat from interstate shipment.[1]

Trial on the superseding indictment was set for November 7, 1983. On that date voir dire was conducted, a jury was selected, and court was adjourned indefinitely. On November 30 Andrews was notified that his trial had been set for January 23, 1984. Andrews filed a motion on December 22 to dismiss under the Speedy Trial Act, which the district court denied on January 3.

Both Andrews and his counsel, Mark Lee, moved the court in early January to allow Lee to withdraw as appointed counsel. Lee represented to the court that he was leaving the practice of law and returning to the University of New Mexico on January 16, 1984, to pursue a degree in the sciences. Lee was concerned that the start of classes on January 16 would conflict with the January 23 trial date. The district judge denied the motions notwithstanding his expectation that the trial would take three or four days.

Andrews, who had remained incarcerated following his original arraignment, appeared with counsel on January 23 and pled guilty to the conspiracy count in the superseding indictment. He also pled guilty to an information filed that day in open court, charging him with misprision of a felony by failing to report that another defendant named in the original and superseding indictments had stolen meat from the interstate shipment. Sentencing was originally set for February 6, but was postponed until February 17 because of Andrews' poor health.

At the sentencing hearing, the court sentenced Andrews to three years on the misprision charge, five years on the conspiracy count, and ordered the terms to run consecutively. The court then stated that it was relieving Lee of any further obligation to represent Andrews, and told Andrews that he had a right both to appeal and to apply as an indigent to the court for appointed counsel. When Andrews asked the court how to proceed, the court did not respond.

After sentencing, Andrews, who remained ill, was incarcerated in the Los Lunas county jail where his symptoms worsened and his medication made him groggy and incoherent. After about a week he was taken to a hospital in Albuquerque and placed in intensive care. A week later he was transported to a federal prison hospital in Springfield, Missouri, where he remained two months. During that time his medication was changed and his condition improved.

Andrews did not receive notification of the entry of judgment. Nevertheless, on March 12, 1984, he wrote a letter stating his wish to appeal and mailed it from the prison hospital mailbox in Springfield to the circuit court in Denver. This letter was not received by the clerk of the Court of Appeals until March 27. It was forwarded to the district court in Albuquerque where it was filed on March 30.

On January 2, 1985, represented by appointed counsel, Andrews renewed a motion filed in August, 1984, requesting an extension of time to file a notice of appeal on the basis of excusable neglect. Andrews attached an affidavit to his motion in which he recounted the circumstances giving rise to his untimely appeal, as outlined above. The district court concluded that Andrews had failed to file his notice of appeal within the thirty day extension period provided by Fed.R.App.P. 4(b), and denied the motion.

## II.

### APPELLATE JURISDICTION

The Federal Rules of Appellate Procedure provide in pertinent part:

> only, or with both the meat and the trailer in a single count.

---

1. The district court subsequently required the Government to elect whether to charge Andrews with transporting the meat only, or the trailer

"In a criminal case the notice of appeal by a defendant shall be filed in the district court within 10 days after the entry of the judgment or the order appealed from.... A judgment or order is entered within the meaning of this subdivision when it is entered in the criminal docket. Upon a showing of excusable neglect the district court may, before or after the time has expired, with or without motion and notice, extend the time for filing a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision."

Fed.R.App.P. 4(b).

■ In *United States v. Lucas*, 597 F.2d 243 (10th Cir.1979), this court held that a defendant who files a notice of appeal within the Rule 4(b) thirty day extension period may obtain relief by a showing of excusable neglect notwithstanding his failure to file a motion seeking such relief within that same time frame. In the instant case, although the judgment was filed on February 17, it was not entered on the criminal docket until February 22, and the time in which to file an appeal did not begin to run until that date. *See United States v. Thoreen*, 653 F.2d 1332, 1337–38 (9th Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982); *United States v. Santia-Manriquez*, 603 F.2d 575, 577 n. 1 (5th Cir.1979). Because the thirty-day period provided by the Rule did not expire until April 2, Andrews' filing in district court on March 30 was within the extension period.[2] Accordingly, the court erred by not considering Andrews' claim of excusable neglect.

■ On appeal Andrews contends that the circumstances set out in his affidavit, which the Government does not controvert, establish excusable neglect as a matter of law. We agree. Andrews was seriously ill and heavily medicated during the time in which he was required to appeal. Moreover, Andrews was improperly denied the aid of appointed counsel in pursuing his appeal when the district court dismissed Lee as Andrews' counsel at the sentencing hearing without replacing him.

The Criminal Justice Act of 1964 requires that "[a] person for whom counsel is appointed shall be represented at *every stage* of the proceedings from his initial appearance ... *through appeal,* including ancillary matters appropriate to the proceedings." 18 U.S.C. § 3006A(c) (1982) (emphasis added). The District Court for the District of New Mexico has enacted rules to implement the mandate of the Criminal Justice Act. The New Mexico plan provides:

"Counsel appointed by a judge or the Public Defender Organization attorney shall, unless excused by order of the Court, continue to act for the party throughout the proceedings in this Court. In the event that a criminal defendant enters a plea of guilty or is convicted following trial, counsel appointed hereunder shall advise the defendant of his right to appeal and of his right to counsel on appeal. If requested to do so by such defendant, counsel shall file a timely Notice of Appeal, and he shall continue to represent the defendant unless, or until he is relieved by the Court of Appeals.

"A judge may, in the interest of justice, substitute one appointed counsel for another at any stage of any proceeding in this Court."

N.M.Dist.Ct.R., app. A(*l*)(3). This rule requires appointed counsel to file a notice of appeal on request. It also contemplates that new counsel will be substituted if the court finds it necessary to excuse appointed counsel.

Tenth Circuit Rules are similar:

"In cases appealed in which an indigent party was represented by counsel appointed by order of the trial court, *such appointment remains in full force and effect until appointed counsel is*

---

**2.** The district court order denying Andrews' motion for an extension reflects the court's belief that a notice of appeal would have been due no later than March 28. Given our conclusion that the time did not run until April 2, we need not determine whether the notice improperly filed in the circuit court on March 27 was sufficient under Rule 4(b).

*relieved of the duties of his appointment by order of [the court of appeals].* Counsel's duties under his appointment by the trial court include:

> (1) arranging for timely transmission of the record on appeal as provided by Fed.R.App.P. 10 and 11;
>
> (2) filing a docketing statement in accordance with 10th Cir.R. 8;
>
> (3) if requested, filing a memorandum opposing summary disposition; . . ."

10th Cir.R. 4(b) (emphasis added). Implicit in the duties of appointed counsel under this rule is the filing of a notice of appeal upon request.

Andrews, who indicated to the court that he wanted to appeal but did not know how, was denied the opportunity to make such a request when the district court incorrectly relieved Lee of any further obligation to represent Andrews without appointing substitute counsel. One of the purposes of the above rules is to prevent the occurrence in this case: failure of an incarcerated indigent defendant to perfect his appeal within the ten day period. Under all of the circumstances present here, none of which are disputed by the Government, we conclude as a matter of law that Andrews has established excusable neglect. *Cf. Fallen v. United States,* 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964). We therefore have jurisdiction to consider the merits of his appeal.

### III.

### SPEEDY TRIAL ACT

Andrews contends that his rights under the Speedy Trial Act were violated by the two and one-half month delay between the voir dire and the trial date. Under the Act, a defendant must be tried within seventy days from the filing date of the information or indictment, or from the date the defendant appears before a judicial officer of the court, whichever occurs last. 18 U.S.C. § 3161(c)(1). Andrews was arraigned October 6 on the original indictment, and October 13 on the superseding indictment. Voir dire was conducted November 7, but the trial was postponed until January 23, 1984. In denying Andrews' motion to dismiss for failure to comply with the Act, the district court concluded that the seventy day period had begun to run October 6 for all charges in the superseding indictment.[3] The court calculated that, given the amount of excludable delay accrued pursuant to 18 U.S.C. § 3161(h), Andrews' trial had to start no later than January 3, 1984. Citing *United States v. Gonzalez,* 671 F.2d 441 (11th Cir.), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982), the court held that no violation had occurred because Andrews' trial had commenced within the meaning of the Act upon the November 7 voir dire.

In *Gonzalez,* voir dire was conducted on Thursday, November 13, apparently the last day of the seventy day period. The court offered either to resume the trial on Monday, November 17, and recess for the rest of the week, or to resume the following Monday, November 24, and proceed without interruption. Gonzalez' counsel expressed a preference for the second alternative. Nonetheless, he thereafter filed a motion to dismiss for violation of the Speedy Trial Act. The court of appeals rejected Gonzalez' Speedy Trial Act argument, concluding that his trial commenced with voir dire:

> "On these facts—the district court's willingness to resume at an early date, Gonzalez counsel's expressed preference for the later date, the relatively brief period between the date the jury was impaneled

---

**3.** We note that Andrews was not arraigned on the new charge in the superseding indictment until October 13. The outcome in this case would not be affected if we were to assume that the seventy day period did not begin as to this count until October 13. However, we believe the court was correct in starting the Speedy Trial clock for all charges on October 6 because it had previously denied Andrews' motion under 18 U.S.C. § 3161(c)(2) to require 30 days between the arraignment and trial on the new charge. *See United States v. Rojas-Contreras,* — U.S. —, 106 S.Ct. 555, 558, 88 L.Ed.2d 537 (1985) (Blackmun, J., concurring); *United States v. Mitchell,* 723 F.2d 1040, 1044–45 (1st Cir.1983).

and the resumption of the trial—we conclude that the district court complied with the Act."

*Id.* at 444. However, the court recognized the potential for abuse inherent in its decision.

"We caution that our decision not be viewed as a license to evade the Act's spirit by commencing voir dire within the prescribed time limits and then taking a prolonged recess before the jury is sworn and testimony is begun. The district courts must adhere to both the letter and the spirit of the Act, and we will not hesitate to find that a trial has not actually 'commenced' within the requisite time if we perceive an intent to merely pay the Act lip service."

*Id.*

Courts that have adopted the *Gonzalez* position on voir dire have echoed its warning that the holding is not to be used to justify violating the spirit of the Act. *See e.g., United States v. Richmond,* 735 F.2d 208, 211–12 (6th Cir.1984) (fourteen day recess to permit new defense counsel to prepare for trial not an abuse); *United States v. Whitaker,* 722 F.2d 1533, 1535 (11th Cir.1984) (no abuse when jury voir dired on seventieth day and trial commenced three days later); *United States v. Howell,* 719 F.2d 1258, 1262 (5th Cir.1983) (seven day delay after voir dire not abuse), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 1683, 81 L.Ed.2d 878 (1984). In *United States v. Martinez,* 749 F.2d 601 (10th Cir.1984), this court concluded that the defendant's trial had commenced on the date of voir dire. The one month delay between voir dire and taking testimony in that case was caused in part by the need to excuse and replace jurors, and we found no violation "of either the letter or the spirit of the Speedy Trial Act." *Id.* at 605.

 In the instant case, a delay of over two and one-half months occurred between voir dire and the day on which testimony was scheduled to begin. The district judge stated that the delay was occasioned by a heavy criminal docket, several legal holidays, and his attendance at a judicial seminar, which he mistakenly believed was mandatory. The Act specifically provides that a continuance may not be granted by the court "because of general congestion of the court's calendar." 18 U.S.C. § 3161(h)(8)(C). Neither a congested court calendar nor the press of a judge's other business can excuse delay under the Act. *See United States v. Nance,* 666 F.2d 353, 359–60 (9th Cir.1982), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982). This is particularly so where, as here, the defendant is incarcerated for inability to post bail. We conclude that, under the circumstances of this case, Andrews' right to a Speedy Trial was violated by the January 23 trial date.

 The Government, citing 18 U.S.C. § 3161(d)(1),[4] contends that Andrews cannot raise a Speedy Trial Act challenge to the judgment entered on the information because the seventy day period had not run for that charge on January 23. As a general rule, new Speedy Trial Act periods begin to run with respect to an information or indictment adding a new charge not required to be brought in the original in-

---

4. Section 3161(d)(1) states:

"If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint filed against an individual is dismissed or otherwise dropped, and thereafter a complaint is filed against such defendant or individual charging him with the same offense or an offense based on the same conduct or arising from the same criminal episode, or an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsec-

tions (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be."

This section by its terms applies only when an indictment is dismissed on the defendant's motion and an information is filed thereafter. The record here reveals no grant of a motion by Andrews to dismiss; indeed, the superseding indictment was still outstanding when the information was filed. Accordingly, the Government's reliance on § 3161(d)(1) is misplaced. *See United States v. Harris,* 724 F.2d 1452, 1454 (9th Cir.1984).

dictment. *See, e.g., United States v. Heldt,* 745 F.2d 1275, 1279–80 (9th Cir. 1984); *United States v. Novak,* 715 F.2d 810, 817 (3d Cir.1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984). However, when the later charge is merely a part of or only "gilds" the initial charge, the subsequent charge is subject to the same Speedy Trial Act limitations imposed on the earlier indictment. *See United States v. Nixon,* 634 F.2d 306, 309 (5th Cir.), *cert. denied,* 454 U.S. 828, 102 S.Ct. 120, 70 L.Ed.2d 103 (1981); *United States v. DeTienne,* 468 F.2d 151, 155 (7th Cir. 1972), *cert. denied,* 410 U.S. 911, 93 S.Ct. 974, 35 L.Ed.2d 274 (1973).

■ In this case, the conspiracy count of the superseding indictment charged that Andrews conspired with Florence Shipley, among others, to transport stolen goods in interstate commerce between April 4 and April 28, 1983. In furtherance of this conspiracy, Andrews was charged with helping to conceal the crime from April 6 to April 28 by dismantling the truck and burying or repainting the parts. The subsequent information charged Andrews with misprision by failing to report, between April 4 and 6, the theft from interstate shipment by Florence Shipley. "The crime of misprision of felony has four elements: (1) commission of the felony alleged; (2) the accused has full knowledge of that fact; (3) the accused failed to notify authorities; and (4) the accused took an affirmative step to conceal the crime." *United States v. Baez,* 732 F.2d 780, 782 (10th Cir.1984). The information alleges no facts different from those underlying the conspiracy count. The alleged basis of both charges was Andrews' concealment of the theft by Shipley, and the Government has offered no explanation for its delay in bringing the misprision charge, *see DeTienne,* 468 F.2d at 155. Under these circumstances, we conclude that the misprision charge merely gilds the conspiracy count. Therefore we hold that it is subject to the same sanction applicable to the superseding indictment.

In sum, we hold that the Speedy Trial Act was violated. The question remains whether Andrews waived this claim by pleading guilty and, if so, whether the guilty plea was rendered involuntary because of ineffective assistance of counsel.

## IV.

### VALIDITY OF THE GUILTY PLEA

*A. Waiver of Speedy Trial Act Claim*

■ Andrews argues that he did not waive his right to assert Speedy Trial Act violations on appeal by pleading guilty. The Act states that "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." 18 U.S.C. § 3162(a)(2). Andrews asserts that under the statutory language, he preserved his right to pursue his Speedy Trial Act claim by moving for dismissal prior to his guilty plea. The Act provides that a defendant who fails to move for dismissal before pleading guilty waives his claim. Andrews urges that if such a failure waives a defendant's rights, then a motion to dismiss preserves these rights notwithstanding a subsequent guilty plea.

Neither the Act nor its legislative history directly address the consequences of entering an unconditional guilty plea after moving to dismiss on Speedy Trial Act grounds. The language of the Act permits but does not require the interpretation urged by Andrews. However, Andrews' construction is inconsistent with common law principles in effect when this legislation was enacted. "Statutes which invade the common law ... are to be read with a presumption favoring the retention of long-established and familiar [common law] principles, except when a statutory purpose to the contrary is evident." *Isbrandtsen Co. v. Johnson,* 343 U.S. 779, 783, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294 (1952).

Prior to the enactment of the Speedy Trial Act, the common law rule was firmly established that a defendant who knowingly and voluntarily entered a guilty plea waived all nonjurisdictional defects in the criminal proceeding, including alleged viola-

tions of constitutional rights. *See Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *Mahler v. United States,* 333 F.2d 472 (10th Cir.1964), *cert. denied,* 379 U.S. 933, 85 S.Ct. 709, 13 L.Ed.2d 613 (1965). *Compare United States v. Broce,* 781 F.2d 792 (10th Cir.1986) (en banc) (double jeopardy is nonwaivable jurisdictional issue). It is also well established that a plea of nolo contendere has the effect of a plea of guilty in waiving nonjurisdictional defects. *See Zebelman v. United States,* 339 F.2d 484, 485 (10th Cir.1964) (and cases cited).

The Speedy Trial Act is not jurisdictional in nature. *See United States v. Yunis,* 723 F.2d 795, 796 (11th Cir.1984). Moreover, a defendant who wishes to preserve his claim under the Speedy Trial Act while pleading guilty may do so by entering a conditional guilty plea pursuant to Fed.R.Crim.P. 11(a)(2).[5] *See, e.g., United States v. Pollock,* 726 F.2d 1456, 1459 (9th Cir.1984). This procedure furthers the objectives of the Speedy Trial Act by enabling a defendant to preserve pretrial issues without the judicial and prosecutorial cost of an entire trial. Fed.R.Crim.P. 11(a)(2) advisory committee note. Accordingly, in the absence of contrary legislative intent, we must conclude that section 3162(a)(2) simply restates the governing law at the time the Act was passed, thus putting a defendant on notice that his rights under the Act are subject to waiver by a plea of guilty. *See Yunis,* 723 F.2d 795.

*B. Claim of Ineffective Assistance of Counsel*

■ Andrews argues that his counsel's representation was constitutionally inadequate. He further argues that even if an

unconditional voluntary guilty plea waives the right to pursue Speedy Trial Act violations, his right was not waived because his plea was rendered involuntary by the ineffective assistance of his counsel.

Andrews contends that his Sixth Amendment right to the effective assistance of counsel was denied because his attorney, Mark Lee, faced a conflict between his personal interests and his client's interests, and because the district court failed to undertake any factual inquiry once the situation had been called to its attention. The only facts that we have regarding the alleged personal conflict are contained in the district court order denying Lee's motion to withdraw. The order recites that Lee had a telephone conversation with the district court's law clerk in late December, 1983, or early January, 1984. Lee informed the clerk of his plans to leave the practice of law to pursue his studies full time, and of his concern over the conflict between the beginning of his classes and Andrews' trial date. At that time Lee unsuccessfully requested an opportunity to discuss with the court his possible withdrawal from the case. Subsequently, on January 5, 1985, Andrews wrote a letter to the court expressing his belief that his counsel's representation was inadequate due to a conflict, and requesting appointment of substitute counsel. The court denied Andrews' request. On January 11, Lee filed the motion to withdraw. Lee did not refer to the personal conflict; rather, he incorporated Andrews' prior letter and stated that Andrews did not believe he could be adequately represented. Lee requested on behalf of Andrews that new counsel be appointed or that Andrews be allowed to proceed pro se. There is no indication from Andrews that he desired to proceed pro se; on the contrary, his own motion indicates otherwise.

---

5. The Rule provides:

"With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the

adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea."

Fed.R.Crim.P. 11(a)(2).

Thus, the ineffective assistance of counsel claim is predicated on the contention that Andrews' counsel, Mr. Lee, was in a conflict of interest situation generated by his personal desire to devote his time and attention to pre-med studies at the University of New Mexico which were scheduled to begin one week prior to Andrews' trial date and his duty to zealously represent Andrews. Andrews has analogized this situation with a conflict of interest between an attorney and co-defendants. In our view, this argument misses the mark.

Lee's request to withdraw, when considered with Andrews' letter to the court of January 5, 1985, wherein Andrews expressed his view that Lee's representation was not adequate, does not demonstrate the type of conflict identified in *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981), *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) or *United States v. Winkle*, 722 F.2d 605 (10th Cir.1983). Each of these cases involved the question of counsel's ability to perform in a loyal, zealous and unfettered manner.

*Wood v. Georgia, supra*, involved counsel who was possibly in a conflict area because he was hired and paid by the same party who had previously agreed and later refused to pay the fines imposed upon the petitioners faced with revocation of probation resulting therefrom. *Cuyler v. Sullivan, supra*, involved two retained lawyers who represented three defendants charged with murder. The Court of appeals granted habeas corpus relief on the ground that the multiple representation demonstrated a possible conflict of interest. The Supreme court reversed, holding that "[I]n order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at p. 350, 100 S.Ct. at p. 1719. *Holloway v. Arkansas, supra*, involved counsel whom the trial court required to represent three co-defendants over objection. Counsel had received confidential information from each of the co-defendants and thus was confronted with the risk of representing conflicting interests. In *Winkle, supra*, defense counsel had previously represented the prosecution's key witness. The court concluded that a substantial problem of conflict appeared because "[T]here was an apparent difficulty confronting defense counsel when he questioned his former client's credibility, and there was an obvious difficulty about what he may have been 'compelled to refrain from doing.' *Holloway, supra*, 435 U.S. at 490 [98 S.Ct. at 1182] ..." *Id.* at 611. Furthermore, *Winkle* differs drastically from the instant case in that during the sentencing proceeding, defendant Winkle was very vocal about his dissatisfaction with the representation provided by his trial counsel. The distinctions between the cited cases and the instant case are several. Unlike those cases, the "conflict" here does not involve counsel's ability to represent his client fairly, loyally or impartially. The only question is whether, because Lee had commenced his pre-med studies, he did not perform adequately in his representation of Andrews. We hold that the record before us demonstrates that Mr. Lee performed adequately and that no actual or potential conflict of interest has been demonstrated to have adversely affected Mr. Lee's performance. Thus, a remand would serve no purpose. The record shows that defense counsel's performance was adequate, that he was not affected by an improper conflict, and that Andrews' plea was voluntary.

The letter from Andrews to the court, dated January 5, 1985, made no reference to Lee's desire to withdraw in order to attend school; rather, the Andrews complaint was that "[I] feel a conflict of interest is evident. In all honesty I do not feel my present attorney is doing all he can in total sincerity towards my defense. Nor do I feel he handles my defense as I feel it should be handled." (R., Vol. I, No. 84–1458, pp. 87, 88.) In denying Andrews' written request, the trial court, by formal Order, treated same as a motion to appoint

new counsel. First, noting that Andrews asserted that he is entitled to counsel of his choice which the court properly found to be not well taken, the trial court specifically ruled that a defendant's mere subjective lack of confidence in his attorney does not render the attorney's assistance ineffective under the sixth amendment any more than a pre-trial difference over trial tactics does. Thus, the trial court concluded that Andrews' "[c]onclusory allegations amount to no more than a lack of confidence in his attorney and a difference of opinion with his attorney over trial tactics." *Id.* at 93. Second, the trial court stated that, based on a careful review of the pre-trial record, Lee's representation of Andrews "[h]as been entirely adequate and professionally competent." *Id.* at 94. The trial court specifically addressed the discovery motions and other motions filed by Lee on behalf of Andrews, together with a "thoughtful list of voir dire questions for jury selection" demonstrating to the court that Lee had been "articulate and aggressive" on behalf of his client. *Id.* at 94.

On January 23, 1985, a hearing was held relative to a Memorandum of Understanding constituting a plea agreement whereby Andrews, represented by Lee, agreed to a change of plea. Andrews agreed to enter pleas of guilty to Count I in the superseding indictment under 18 U.S.C. § 371 (conspiracy) and, in addition, to a misprision of felony charge pursuant to 18 U.S.C. § 4 set forth by Information. In exchange, the Government agreed to dismiss felony charges alleged in Counts II, III and IV of the superseding indictment and to (a) not pursue potential state insurance fraud claims then under investigation against Andrews involving a scheme that may have occurred between Andrews and one David McCasland, and (b) contact the respective state district attorneys' offices to obtain their agreement not to file additional charges against Andrews stemming from "[a]ny underlying fact pattern, which is the basis for the current charges pending against the defendant." (R., Supp. Vol. I, No. 85–1249, pp. 3, 4.) The transcript of that proceeding shows that Andrews understood the nature of the agreement and that he freely, voluntarily and intelligently agreed thereto and voluntarily entered his guilty pleas following full compliance with Fed.R.Crim.P. 11.

During the Rule 11 proceeding, the trial court made meticulous inquiries of Andrews' knowledge of: his right to be indicted, right to be tried by jury, the charges, his right to consult with his counsel relative to the charges, and the possible consequences of the guilty pleas. *See* Supp. Vol. I, *supra.* With particular reference to the relationship *at that time* between Andrews and his counsel, Lee, the trial court specifically addressed Andrews relative to the prior letter written by Andrews to the court requesting that Lee be discharged and that counsel of his choice be appointed to represent him. The court inquired:

> In reference to that, [Mr. Lee's competency to represent Andrews] are you satisfied with the representation of your counsel, Mark Lee?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: What was that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. Have you had ample opportunity to discuss the preparation and presentment of this case to the Court?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Mr. Lee, have you had ample opportunity to discuss the matter with your client?
>
> MR. LEE: Yes, sir.
>
> THE COURT: Do you feel that you are ready and prepared to proceed to trial this morning in the event that we had to do so?
>
> MR. LEE: I was, your Honor.

*Id.* at 15, 16.

During that same January 23, 1985, plea proceeding, it became crystal clear that the plea agreement was central to Andrews' guilty plea. The record does not reflect the extent of state charges then pending or anticipated against Andrews but the Government agreed to contact "respective" district attorneys' offices to obtain their

agreement not to file additional charges against Andrews arising out of the same fact pattern. The trial court had before it the document entitled "Memorandum of Understanding Regarding Guilty Plea." The court meticulously inquired of Andrews, after requesting that he examine the three-page document in open court, whether his signature and that of his attorney, Lee, appears thereon. Andrews acknowledged that they did so appear. The following then transpired:

THE COURT: Have you had an opportunity to discuss this plea agreement with your client, Mr. Lee?

MR. LEE: Yes, your Honor.

THE COURT: Mr. Andrews, have you had the opportunity to discuss this matter with your counsel?

THE DEFENDANT: Yes.

THE COURT: Tell me in your words, Mr. Andrews, what is in the deal for you.

THE DEFENDANT: I am being charged with two counts, and everything else will be dismissed.

THE COURT: Is that correct, Mr. Lee.

MR. LEE: Your Honor, that is kind of correct. In addition, there is an agreement that the U.S. Attorney would contact the state with respect to any other charges that may stem from the underlying fact pattern and also that the United States would agree not to pursue any possible insurance fraud scheme that may have been occurring at the same time with David McCasland.

THE COURT: Did you hear that, Mr. Andrews?

THE DEFENDANT: Yes, sir.

THE COURT: Is that what is in that, in addition to what you indicated to the Court on your behalf and in your favor?

THE DEFENDANT: Yes.

*Id.* at 21, 22.

Mr. Andrews, Mr. Lee and counsel for the Government then acknowledged to the court that the three-page document contained the full agreement. Thereupon, the trial court inquired of Andrews whether, in relation to his participation in the plea agreement, he had been threatened or had entered into the agreement of his own free will. Andrews responded that he had not been threatened and had entered into the plea agreement of his free will. *Id.* at 23. Upon further inquiry by the court, Andrews acknowledged that by pleading guilty he understood that he was waiving trial by jury, the right to have his counsel cross-examine each witness and the right to be presumed innocent until proven guilty. Andrews re-affirmed his desire to enter a plea of guilty. *Id.* at 24.

A presentence report was ordered by the trial court. After it was submitted, sentencing proceedings were held on February 17, 1985. Mr. Andrews, appeared in person and was represented by his counsel, Mr. Lee. Prior to sentencing, Attorney Lee requested, in light of Andrews' physical problems, that Andrews serve any sentence, if imposed, at the Fort Worth, Texas, penal institution because it has the best medical care. (R., Supp. Vol. II, No. 85–1249, p. 9, 10.) Andrews did not elect to address the court. Thereupon, prior to sentencing, the trial court stated:

I might at the outset say to Mr. Lee, your counsel, Mr. Andrews, as I have already indicated in the written order, that I find that Mr. Lee did a very good job in representing you in this matter. And I want that actually on the record, to commend Mr. Lee. It was a direct result of his research and matters that were brought to the attention of this Court that certain motions were granted in your favor, that not only inured ultimately to your benefit, Mr. Andrews, but to other defendants in relation to the allegations on the conspiracy.

*Id.* at 10.

Thus, the record is clear that the trial court did (a) specifically address the alleged "conflict of interest" contention raised by appellant Andrews and found no cause, and (b) find attorney Lee's representation of Mr. Andrews to be "very good." There is nothing to be served by remand on the

issue of ineffective assistance of counsel. The trial court clearly and unequivocally resolved that issue against Mr. Andrews. The record demonstrates that Andrews' claim of ineffective assistance of counsel is without any merit.

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), holds that in order to establish a claim of ineffective assistance of counsel, a reviewing court must determine, *from the record,* that counsel's representation, based on an objective standard, was such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Such a determination must be made in light of all of the circumstances presented in the record. The appellate court is admonished that the scrutiny must be highly deferential. Andrews does not point to any aspects of Lee's representation, other than failure to renew the speedy trial claim, that can be identified as unprofessional acts or omissions. In fact, there is every reason to believe that Mr. Andrews, under the Plea Agreement, accomplished a net reduction in likely or possible felony charges. It extended beyond dropping the other counts in the superseding indictment.

The decisions of this court interpreting and applying the test governing ineffective assistance of counsel dictate that we hold that Mr. Lee, as so found by the trial court, rendered effective legal assistance on behalf of Mr. Andrews. There is no better way—or any tool more practical or useful—to judge counsel's performance than by a careful review of the record.

In *United States v. Espinosa,* 771 F.2d 1382 (10th Cir.1985), we held that the specific errors defense counsel allegedly committed at trial did not rise to the level of unreasonableness required to overcome a *strong presumption* that defense counsel's performance was adequate. We there noted that *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) provided that it is only when the surrounding circumstances justify a presumption of ineffectiveness that a Sixth Amendment

claim will be sufficient without inquiry into counsel's performance at trial; further, that *Cronic* explained that *those* circumstances must be so likely to have prejudiced the defendant that the cost of litigating the issue would not be justified. In *Espinosa,* we pertinently observed:

> We therefore must next examine counsel's actual performance at trial. We must apply *Strickland v. Washington* ... to decide whether there was an actual breakdown of the adversarial process during trial. See *Cronic,* 466 U.S. at ——, n. 41 [104 S.Ct. at 2051, n. 41].... Under *Strickland v. Washington,* the defendant must meet a two-part test. He must first show that counsel's performance was deficient or unreasonable considering all of the circumstances. 466 U.S. at ——, 104 S.Ct. at 2064.
>
> Judicial scrutiny of counsel's performance must be highly deferential.... Because of the difficulties inherent in making the evaluation a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."
>
> *Id.* 466 U.S. at ——, 104 S.Ct. at 2065.
>
> Second, the defendant must show that the deficient performance prejudiced the defense, or that "There is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* 466 U.S. at ——, 104 S.Ct. at 2068. "In making the determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.*

771 F.2d at 1411.

Decisions of this court in accord with *Espinosa, supra,* include *United States v. Dressell,* 742 F.2d 1256 (10th Cir.1984) (must demonstrate that defense counsel's representation fell below the standard of reasonableness under prevailing professional norms); *United States v. Janoe,* 720

F.2d 1156 (10th Cir.1983) (no prejudice was demonstrated); *Mason v. United States,* 719 F.2d 1485 (10th Cir.1983) (actions of defense counsel in filing late pretrial motions, making improper closing statements, failure to timely read a presentence report, all of which were improprieties of a high level, nevertheless did not abridge the defendant's right to effective assistance of counsel); *United States v. Glick,* 710 F.2d 639 (10th Cir.1983) (will presume, in the absence of some evidence to be measured by an objective standard to the contrary, that defense counsel performed effectively); *United States v. Golub,* 694 F.2d 207 (10th Cir.1982) (we reviewed and re-affirmed our *en banc* decision in *Dyer v. Crisp,* 613 F.2d 275 (10th Cir.), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980), holding that the test in judging effective assistance of counsel is whether counsel exercised the skill, judgment and diligence of a reasonably competent defense attorney; further, that a claim of ineffective assistance of counsel imposes a burden on the defendant to demonstrate how he was actually prejudiced by his counsel's representation.

WE AFFIRM.

SEYMOUR, Circuit Judge, concurring in part and dissenting in part.

I concur fully in Parts I, II, III, and IVA of the majority opinion. I find the analysis persuasively and eloquently articulated. However, because I conclude that the applicable Supreme Court cases require further district court proceedings with respect to the alleged ineffectiveness of counsel, I must respectfully dissent from the result in Part IVB.

As discussed in Part III of the majority opinion, Andrews has a valid Speedy Trial Act claim which he could have preserved only by going to trial or by entering a conditional guilty plea under Fed.R.Crim.P. 11(a)(2). Nonetheless, his attorney advised Andrews to enter an unconditional plea. *See* rec., suppl. vol. I, at 20 (transcript of guilty plea proceedings). Andrews' need to attempt to negotiate a conditional plea or

to go to trial was clearly at odds with his attorney's apparent desire to bring the case to a rapid resolution in order to avoid interfering with his plans to leave the practice of law and return to graduate school. Contrary to the majority, I believe that this potential conflict may well undermine "counsel's ability to perform in a loyal, zealous and unfettered manner." Majority Op. at 811.

"Where a constitutional right to counsel exists, [the Supreme Court's] Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981). "These principles concerning conflicts of interest are not restricted to cases of joint representation of co-defendants at a single trial." *United States v. Winkle,* 722 F.2d 605, 610 (10th Cir.1983). The issue is whether the conflict influences basic strategy decisions and prevents the attorney from zealously pursuing his client's interest single-mindedly. *See Wood,* 450 U.S. at 271–72, 101 S.Ct. at 1103–04; *United States v. Hurt,* 543 F.2d 162, 166 (D.C.Cir.1976).

In *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), co-defendants represented by the same attorney moved the trial court for appointment of separate counsel because the attorney believed he was confronted with the risk of representing conflicting interests. The attorney represented to the court that he would be unable to adequately protect his clients during their joint trial due to a conflict created by divided loyalties and confidential communications. The district court neither appointed separate counsel nor took adequate steps to ascertain whether the risk of conflict was too remote to warrant appointment of separate counsel. The Supreme Court held that the defendants had been denied their right to effective assistance of counsel. In so doing, the Court gave conclusive weight to the representation by counsel to the trial court that an actual conflict existed. *Id.* 435 U.S. at 485–88, 98 S.Ct. at 1179–81. The Court

also held that under these circumstances a defendant need not show prejudice because *"to assess the impact* of a conflict of interests *on* the attorney's options, tactics, and *decisions in plea negotiations would be virtually impossible." Id.* at 491, 98 S.Ct. at 1182 (emphasis added). The Court concluded that reversal is automatic whenever a trial court improperly requires continued representation over a timely objection that such representation creates a conflict. *See id.* at 488, 98 S.Ct. at 1180.

In *Cuyler v. Sullivan,* 446 U.S. 335, 345–50, 100 S.Ct. 1708, 1710–19, 64 L.Ed.2d 333 (1980), and *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, the Court further developed the standard to be applied to claims of attorney conflict. Recently, in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court reaffirmed that prejudice is presumed in such cases:

> "One type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice. In *Cuyler v. Sullivan,* 446 U.S., at 345–50, 100 S.Ct., at 1710–19, the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, see, *e.g.,* Fed.Rule Crim.Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the *per se* rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest adversely affected his lawyer's performance.' *Cuyler v. Sullivan, supra,* 446 U.S., at 350, 348, 100 S.Ct., at 1719, 1718 (footnote omitted)."

*Id.* 104 S.Ct. at 2067.[1] *See also Flanagan v. United States,* 465 U.S. 259, 268, 104 S.Ct. 1051, 1056, 79 L.Ed.2d 288 (1984).

Andrews contends that *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426, requires reversal in the present case. However, the Court in *Holloway* emphasized that the conclusive presumption of a conflict arises upon "formal objections, motions, and defense counsel's representations" as an officer of the court that an actual conflict is present. *Id.* 435 U.S. at 485–88 & n. 9, 98 S.Ct. at 1179–81 & n. 9. Although the facts in the instant case strongly suggest the possibility of a conflict, the record on appeal contains no evidence of an unequivocal representation made by counsel to the trial court that an actual conflict prevented him from single-mindedly pursuing Andrews' best interests.[2] Thus this case is more factually akin to *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, than to *Holloway.* In *Wood* the trial court was alerted to the possibility of a disqualifying conflict of interest, although the attorney himself had made no representation that a conflict actually existed. The Supreme Court held that the *possibility* of a conflict was sufficiently apparent "to impose upon the court a duty to inquire further." *Id.* at 272, 101 S.Ct. at 1104. To address the trial court's failure in this regard, the Court vacated the judgment and

---

1. In *Hill v. Lockhart,* —— U.S. ——, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court recently applied to guilty plea proceedings the standard governing ineffective assistance of counsel claims set out in *Strickland v. Washington.*

2. As noted in the majority opinion, the only facts in the record regarding the personal con-

flict are those recited by the trial judge in his order denying Lee's motion to withdraw, which facts the judge obtained from his law clerk after the latter's telephone conversation with Lee. The record therefore does not contain the formal representations of defense counsel found in *Holloway.*

remanded the case for a hearing on the existence of a conflict with instructions to invalidate the proceedings if an actual conflict were ascertained. *See id.* at 273–74, 101 S.Ct. at 1104–05.

I believe that the *Wood* procedure is appropriate in the present case. Accordingly, I would vacate the judgment and remand the case to the trial court for a hearing to determine whether the conflict suggested by this record actually existed. *See Winkle*, 722 F.2d at 612. If the court determined that Andrews' guilty plea was invalid because of ineffective assistance of counsel, then the guilty plea would not waive Andrews' valid Speedy Trial Act claim. In that event the court would be required to dismiss all charges against Andrews pursuant to 18 U.S.C. § 3162(a)(2).

Accordingly, I dissent.