F I L E D
United States Court of Appeals
Tenth Circuit

JAN 9 1998

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

SIMON DURAN,

       Defendant-Appellant.

No. 96-4108

---

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 95-CR-221-001-J)**

---

Wayne T. Dance, Assistant United States Attorney, Salt Lake City, Utah (Scott M. Matheson, Jr., United States Attorney, and Brooke C. Wells, Assistant United States Attorney, with him on the brief) for Plaintiff-Appellee.

C. Danny Frazier, Esq., Provo, Utah, for Defendant-Appellant.

---

Before **BALDOCK** and **EBEL**, Circuit Judges and **MCWILLIAMS**, Senior Circuit Judge.

---

**EBEL**, Circuit Judge.

    In this cocaine distribution case, the defendant relied on the affirmative defense that he was entrapped by the undercover government agents and government informant who negotiated a series of cocaine deals with him. During

the defendant's trial, it became clear that the jury was confused about the legal contours of the entrapment defense. On appeal, the government concedes that the court's jury instructions on entrapment were plainly erroneous, and we agree. Furthermore, in the face of obvious confusion by the jury as to the entrapment defense, it was plain error for the district court to respond to the jury's requests for clarification by simply referring the jury back to the initial defective jury charge, which in fact was the source of the jury's confusion. We reject, however, the defendant's additional contention that he was entitled to an acquittal as a matter of law. Instead, we remand this case for a new trial.

## I.

Defendant-appellant Simon Duran ("Duran") was convicted on one count of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c), and 18 U.S.C. § 2. Duran's arrest arose out of a series of "controlled buys" by undercover agents of the FBI and the Utah Department of Corrections during the fall of 1995, but his trial and conviction revolved around only the last deal, involving a one-kilogram transaction where Duran acted as a middle-man for another cocaine supplier.[1]

---

[1]Because the jury found Duran guilty, we take the facts in the light most favorable to the government. See United States v. Yoakam, 116 F.3d 1346, 1349

(continued...)

During the summer of 1995, Duran worked as a stocker for a supermarket chain's warehouse facility in Salt Lake City. One of his co-workers was Douglas Needham ("Needham"), who at the time was a confidential informant for the FBI. Duran testified that during their work shifts, Needham bragged about his contacts in the drug world, and he approached Duran about finding a source for cocaine. Needham, however, testified that it was Duran who first suggested dealing in drugs.

After some initial contact with Duran, which had not been authorized by the FBI, Needham reported to the FBI in early September that Duran would be willing to sell cocaine. On September 16, 1995, Duran took part in the sale of one ounce of cocaine to Officer Leona Ika of the Utah Department of Corrections ("Officer Ika"). On September 19, 1995, Duran took part in the sale of four ounces of cocaine to FBI Special Agent Bob Evans ("Agent Evans"). On September 29, Duran took part in a second sale to Agent Evans, again for four ounces of cocaine. At all three cocaine purchases, Needham acted as a liaison between Duran and the undercover agents. Duran contends that he was pressured into these deals by Needham, that he was acting merely as an intermediary for the true

---

[1](...continued)
(10th Cir. 1997).

supplier of the cocaine -- a man named Armondo -- and that he made no money from the purchases.

During the month of October, Evans and Duran discussed the sale of a kilogram of cocaine numerous times, including during several meetings at a local strip club. Agent Evans had purchased a membership at the club in order to ensure that Duran would be able to join him there. During the latter part of October, Duran placed several phone calls to Evans to try to set up a deal for a kilogram of cocaine.

On November 3, 1995, these discussions culminated in the sale of a kilogram of cocaine at the home of Leobardo Cruz ("Cruz") in West Valley City, Utah, with Duran acting as intermediary for Cruz and Needham acting as intermediary for Evans. Cruz testified that the cocaine came from another dealer, and that Cruz was charging Duran $21,000 for the drugs. The purchase price from Duran to Agent Evans initially was set at $24,000, but Evans testified that Duran unexpectedly raised the price to $25,000 and announced that he expected Evans to provide him with an additional ounce of cocaine for himself. After Needham inspected the cocaine for Officer Ika and Agent Evans, Duran and Cruz were arrested. Subsequently, Cruz testified against Duran as part of a plea bargain.

Duran's defense at trial relied solely on his claim of entrapment. Duran's counsel offered a proposed jury instruction on entrapment,[2] but this instruction was not used by the court; the record on appeal is silent as to the basis of the court's rejection of this proposal. Instead, the court delivered its own instruction setting out the elements of the defense of entrapment to the jury thus:

Instruction No. 32A:
Now, the defendant, Simon Duran, asserts as a defense that he was entrapped by the government through its agent to commit the crime of possession of a controlled substance with intent to distribute that is alleged in count one of the indictment. A defendant may not be convicted of a crime if that person was entrapped by the government to do the acts charged. The person is entrapped when that person has no previous intent or

---

[2]The instruction offered by Duran's counsel provided,
The government has the burden of proving beyond a reasonable doubt that the defendant was not entrapped. The government must prove the following:
1. The defendant was not predisposed to commit the crime before being contacted by government agents, and
2. The defendant was not induced by the government agents to commit the crime.
Where a person independent of and before government contact, is predisposed to commit the crime, it is not entrapment if government agents merely provide an opportunity to commit the crime.
We note that this proposed instruction is clearly incorrect because once an entrapment defense is properly raised, the government has the burden of proving that the defendant was predisposed to commit the crime. The tendered instruction erroneously provides that the government must prove that the defendant was not predisposed to commit the crime. See United States v. Cecil, 96 F.3d 1344, 1348 (10th Cir. 1996), cert. denied, 117 S. Ct. 987 (1997).

- 5 -

disposition or willingness to commit the crime charged and is induced or persuaded by a government agent to commit the offense.

A person is not entrapped when the person has a previous intent or disposition or willingness to commit the crime charged and the government agent merely provides the opportunity to commit the offense.

In determining the question of entrapment, the jury should consider all of the evidence received in this case concerning the intentions and disposition of the defendant before encountering the government agent, as well as the nature and degree of inducement or persuasion provided by the agent.[3]

Both parties accepted this and all the other instructions drafted by the court without objection.

The court's entrapment instruction was patterned after the instruction suggested in Federal Jury Practice and Instructions, with one key difference. Not included in the district court's instruction was the final paragraph of the suggested instruction that explains the government's burden of proof:

In order to return a verdict of guilty as to Defendant ___ for the crime of ___ charged in [Count _ of] the indictment you must find, beyond a reasonable doubt, that the defendant had a previous intent or disposition or willingness to commit the crime charged.

---

[3]There are two versions of this instruction in the record, one being the written instruction given to the jury upon retiring for deliberation, and the other being a transcript of the oral instructions delivered by the court, with minor variations between them. The version reprinted above is from the transcript of the court's oral instruction.

1 Devitt et al., Federal Jury Practice and Instructions § 19.04 (4th ed. 1992).[4]

[4]The full text of the Devitt entrapment instruction provides:

The Defendant ___ asserts that [he] [she] was entrapped by the government to commit the crime of ____ that is alleged in [Count _ of] the indictment. A defendant may not be convicted of this crime, however, if that person was entrapped by the government to do the acts charged.

A person is entrapped when that person has no previous intent or disposition or willingness to commit the crime charged and is induced or persuaded by law enforcement officers [or by their agents] to commit the offense.

A person is not entrapped when that person has a previous intent or disposition or willingness to commit the crime charged and law enforcement officers [or their agents] merely provide what appears to be an opportunity to commit the offense.

It is not entrapment for a government agent to pretend to be someone else and to then engage or attempt to engage, either personally or through an informer, in an unlawful transaction or in an unlawful act with a person who has a previous intent or disposition or willingness to engage in the unlawful transaction or in the unlawful act.

In determining the question of entrapment, the jury should consider all of the evidence received in this case concerning the intentions and disposition of the defendant before encountering the law enforcement officers [or their agents] as well as the nature and the degree of the inducement or persuasion provided by the law enforcement officers [or their agents].

In order to return a verdict of guilty as to Defendant ___ for the crime of ___ charged in [Count _ of] the indictment you must find, beyond a reasonable doubt, that the defendant had a previous intent or

(continued...)

During its two days of deliberations, the jury sent five notes to the district court with requests for additional materials and interpretations of the instructions. The parties failed to make an adequate record of the sequence of these queries or the court's responses to them, and as result, the record on appeal is decidedly fuzzy about the chronology of events during the jury's deliberation.[5]

_____

[4](...continued)
disposition or willingness to commit the crime charged.

1 Devitt et al., Federal Jury Practice and Instructions § 19.04 (4th ed. 1992).

[5]The parties have provided differing views of the chronology of jury questions and court responses. This difficulty could have been avoided if the district court had taken the expedient of repeating the jury's question each time the court gave its written response. On appeal, the parties also should have provided the court with a full transcript, in correct sequence, of the district court's consideration of each jury question.

The following list appears to be the correct sequence of jury questions and court responses as they actually were asked and answered. (The numbering below is provided for ease of subsequent reference; they were not numbered in the record.)

Jury Query, No. 1:

#1 was the person referred to as Mondo acting as an under cover agent or affiliated in any way with any law enforcement agency?

#2 was the person referred to as "the unknown woman" acting as an under cover agent of any Government or law enforcement agency?

#3 was any cocaine in any buy or sell mention in this case provided for sale by any law enforcement or governmental agency?

Thankyou

(continued...)

                  [Signature]

**Court's Response, No. 1:**

        I acknowledge the note from one of the jurors and suggest that you begin your deliberations and use your best collective memory.

**Jury Query, No. 2:**

        Can Doug Needham be considered an agent or the person used to entrap Simon Duran or does it need to be a government agent like Bob Evans or Ika.
[Signature]

**Jury Query, No. 3:**

        Can we listen to the tapes again?

**Court's Response, No. 2:**

        You have had a long day. Some of your requests require that I assemble the attorneys. You are welcome to go home and are directed to return tomorrow at 9:30 a.m. and continue your deliberations as soon as all members of the jury are present. I will respond to your requests in the morning after conversing with the attorneys. Remember what I have told you. Don't talk to anyone about this case.

**Court's Response, No. 3:**

        Tapes and tape machine furnished herewith.
        Your inquiry concerning the status of Mr. Needham is a question of fact which you must decide.
        Please consider all of the evidence and each of the instructions given you by the Court.

**Jury Query, No. 4:**

        [Jury] Instruction No. 32A
        Line 2 -- was entrapped by the government through its

(continued...)

Nevertheless, these queries show that the jury was puzzled about Needham's status as a government agent and the legal burden of proof with respect to the defense of entrapment. (See Jury Queries Nos. 3, 4, and 5.)

---

[5](...continued)
agent  Please indicate if this agent refers to specifically Bob Evans.
[Signature]

Court's Response, No. 4:
In response to your inquiry, the instruction you refer to refers to any agent doing work for the United States in matters relating to this case.

Jury Query, No. 5:
In Instruction #5 - will you please interpret the following:
"If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you MUST find him guilty."
I don't know if you can answer this. But I'll try anyways. If I have a reasonable doubt of one thing, but am 100% sure of the charge, is this Instruction #5 saying to put aside the reasonable doubt and only look at the charge and because entrapment is not on the charge can it still be used according to Instruction #5
[Signature]

Court's Response, No. 5:
Your note is acknowledged.
You have heard all the witnesses; you have all the evidence.
Follow all of the instructions of the Court. Do the best you can with what you have to work with.

Although the record is sketchy at best as to how these queries were dealt with, during at least one colloquy with the district court the government conceded that Needham probably could be considered a government agent, but the government adamantly objected to both a specific instruction on this issue and a determination by the court that as a matter of law the jury should treat Needham as a government agent. The Court's ultimate response did not define who is a government agent, but merely told the jury that its instructions referred to "any agent doing work for the United States." Both the government and the defendant agreed to that response. As for Jury Query No. 5, which raised the question of the burden of proof for the entrapment defense, we have no record of the decision-making process whereby the court developed its response, nor is there any record of whether the parties objected to the court's response. The court's actual response did not answer the jury's question, but merely exhorted the jury to continue deliberating.

Eventually the jury returned a guilty verdict. The court sentenced Duran to sixty-three months in prison, and a fine of $2,000, with four years of supervised release following the prison term.

## II.

On appeal, Duran contends that the district court's instruction on the entrapment defense was plainly erroneous because of its failure to inform the jury that the government has the burden of proving beyond a reasonable doubt that the defendant was not entrapped. The government concedes that the instruction constituted plain error, but nevertheless, we must still conduct our own independent review of the record to determine whether this case should be remanded. See United States v. Furman, 112 F.3d 435, 438 n.2 (10th Cir. 1997) ("'[P]arties cannot compel us to reverse (or modify) a district court's determination by stipulation.'") (quoting Bolin v. Secretary of Health & Human Servs., 32 F.3d 449, 450 (10th Cir. 1994).

In the absence of any objection that puts the district court clearly on notice as to the asserted inadequacy of a proposed jury instruction, see Fed. R. Crim. P. 30, we will review jury instructions only for plain error. See United States v. Allen, __ F.3d __, 1997 WL 716081, at *2 (10th Cir. Nov. 18, 1997). In Duran's case, his attorney did not object to the district court's failure to include burden-of-proof language in the court's proposed jury instruction on entrapment. Thus, Duran failed to put the district court "distinctly" on notice as to the legal inadequacy of the court's proposed instruction. See Fed. R. Crim. P. 30. As a result, we review the jury instructions in Duran's case only for plain error.

Under the plain error analysis dictated by Fed. R. Crim. P. 52(b), an appellant must establish four elements before an appellate court may upset the judgment of a district court:

> [T]here must be (1) "error," (2) that is "plain," and (3) that "affect[s] substantial rights." If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

Johnson v. United States, __ U.S. __, 117 S. Ct. 1544, 1549 (1997) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)); see also Allen, 1997 WL 716081, at *3. In the context of a challenged jury instruction, "error" arises if, considering the instructions as a whole, the jury has been misled. See United States v. Pappert, 112 F.3d 1073, 1076 (10th Cir. 1997). An error in a jury instruction is "plain" if it is obvious or clear, i.e., if it contrary to well-settled law. See United States v. Milton, 62 F.3d 1292, 1294 (10th Cir. 1995); United States v. Brown, 996 F.2d 1049, 1053 (10th Cir. 1993). A plainly erroneous jury instruction affects a defendant's "substantial rights" if the instruction concerns a principal element of the defense or an element of the crime, thus suggesting that the error affected the outcome of the case. See Olano, 507 U.S. at 734; see also United States v. DeSantiago-Flores, 107 F.3d 1472, 1481 (10th Cir.), overruled on other grounds, United States v. Holland, 116 F.3d 1353, 1359 n.4 (10th Cir.), cert. denied 118 S. Ct. 253 (1997). Finally, the fairness or integrity of a defendant's

- 13 -

trial is "seriously affected" when the defendant has presented substantial evidence in support of an affirmative defense which has been undermined by an erroneous instruction. Cf. Johnson, 117 S. Ct. at 1550 (holding that a trial court's failure to submit the issue of materiality to the jury in a perjury prosecution did not seriously affect the fairness of the defendant's trial when the evidence on the materiality of the defendant's statement was "overwhelming").

A.

The first prong of the Olano/Johnson plain error analysis requires a comparison of the law of the affirmative defense of entrapment with the district court's actual jury instruction on entrapment. There are two elements to the entrapment defense: "The defendant must have been induced to commit the offense by government agents, and the defendant must not have been otherwise predisposed to do so when presented with the opportunity." United States v. Madrigal, 43 F.3d 1367, 1369 (10th Cir. 1994) (citing United States v. Fadel, 844 F.2d 1425, 1429 (10th Cir. 1988)). Once a defendant has presented sufficient evidence to put the affirmative defense of entrapment at issue, "'the prosecution has the burden of proving, beyond a reasonable doubt, that a defendant was not entrapped.'" Id. (quoting United States v. Young, 954 F.2d 614, 616 (10th Cir. 1992)). The prosecution generally meets this burden if it "'prove[s] beyond reasonable doubt that the defendant was disposed to commit the criminal act prior

- 14 -

to first being approached by Government agents.'" United States v. Cecil, 96 F.3d 1344, 1348 (10th Cir. 1996) (quoting Jacobson v. United States, 503 U.S. 540, 549 (1992)), cert. denied, 117 S. Ct. 987 (1997). Of course, the prosecution also may meet its burden by proving beyond a reasonable doubt that the government did not induce the defendant to commit the crime. See United States v. El-Gawli, 837 F.2d 142, 147 (3d Cir. 1988).

In light of this well-established case law, and as the government has conceded, the district court's entrapment instruction in Duran's case was deficient. Although the court's instructions correctly described the elements of an entrapment defense, nowhere in the instructions did the court inform the jury that the burden of proving beyond a reasonable doubt that Duran was not entrapped lay with the government -- or the equivalent that the jury could not convict unless it first found beyond a reasonable doubt that Duran was not entrapped. Indeed, when a defendant has presented sufficient evidence to raise the issue of entrapment for the jury,[6] proof that the defendant was not entrapped effectively becomes an element of the crime. See Jacobson, 503 U.S. at 548-50 (reversing a

---

[6]There is no dispute in this case that Duran met his initial burden of coming forward with sufficient evidence to place the entrapment question at issue in the case. See United States v. Ortiz, 804 F.2d 1161, 1165 (10th Cir. 1986) ("The defendant is entitled to present the defense [of entrapment] to the jury only if he can identify evidence 'from which a reasonable juror could derive a reasonable doubt as to the origin of criminal intent.") (quoting United States v. Nations, 764 F.2d 1073, 1080 (5th Cir. 1985)) (emphasis in original).

child pornography conviction because the government failed to prove, in addition to the traditional elements of the pornography charge, that the defendant was predisposed to buy illegal child pornography prior to contact with government agents); cf. United States v. Corrigan, 548 F.2d 879, 883-84 (10th Cir. 1977) (holding that when a defendant raises credible evidence of the affirmative defense of self-defense, the prosecution must disprove the elements of self-defense in addition to proving the elements of assault).

The deficiency in the district court's entrapment instruction is compounded by looking at the instructions as a whole. The district court went to great lengths to emphasize that the burden of proof lies with the government on the elements of the crime. (See Instr. Nos. 4, 18, 22.)[7] But the court presented entrapment "as a

_____

[7]The text of these instructions provides,

Jury Instruction No. 4.
In a criminal case such as this, the law presumes the defendant to be innocent until the defendant is proven guilty beyond a reasonable doubt. The burden of proving the defendant guilty beyond a reasonable doubt rests upon the United States. That burden never shifts to the defendant. The law does not require the defendant to prove the defendant's innocence, to call any witnesses, or to produce any evidence. If the United States fails to prove the defendant guilty beyond a reasonable doubt then you must find the defendant not guilty.

Jury Instruction No. 18.

(continued...)

- 16 -

defense" asserted by the defendant and failed to tell the jury either that lack of

entrapment had become an element of the crime or that the government bears the

burden of proving lack of entrapment once the defendant has made an initial

showing on the defense.  (See Instr. No. 32A.)  The court in Corrigan considered

a similar problem in an instruction on the affirmative defense of self-defense

where the district court also had begun the instruction by pointing out that the

---

[7](...continued)

> The defendant has entered a plea of "not guilty" to the offense charged in the indictment.  This plea puts in issue each of the essential elements of the crime charged and imposes on the United States the burden of establishing each of those elements beyond a reasonable doubt.
>
> Jury Instruction No. 22.
> . . . .
> In order for the defendant to be found guilty of the offense charged in Count I, the government must prove the following three elements beyond a reasonable doubt:
>> First, that the defendant possessed cocaine, a Schedule II controlled substance;
>> Second, that the defendant did so knowingly or intentionally; and
>> Third, that the defendant intended to distribute the controlled substance.
>
> As stated before, the burden is always upon the government to prove beyond a reasonable doubt every essential element of the crime charged.  The law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

defendant had raised an affirmative defense.  See Corrigan, 548 F.2d at 883.  In that case, the court concluded that the jury instruction "could easily be taken to mean that since the defendant raised the issue, it is his burden to prove it to the jury's satisfaction."  Id.  Such an interpretation was legally incorrect in Corrigan, and it would be just as incorrect in Duran's case.  See id.  Thus, we hold that the district court's instructions below were deficient because nowhere does the entrapment instruction in Duran's case contradict this potential, incorrect interpretation.

Notwithstanding the desirability of explicitly stating that it is the government's burden to prove no entrapment, in prior cases we have held that this alone is not fatal to the jury instructions as a whole so long as the instructions clearly state that before the jury can convict, it must find beyond a reasonable doubt that there was no entrapment.  See United States v. Smegal, 772 F.2d 659, 660-61 (10th Cir. 1985) (upholding an entrapment instruction that did not explicitly say the government had the burden of proof but which did require the jury to "find beyond a reasonable doubt the Defendant was predisposed to commit such an offense" before it could convict); United States v. Martinez, 749 F.2d 601, 606 (10th Cir. 1984) (same); United States v. Gurule, 522 F.2d 20, 25 (10th Cir. 1975) (upholding jury instructions that provided, "If . . . the jury should find beyond a reasonable doubt . . . that . . . the defendant . . . was ready and willing to

commit the crimes . . . whenever opportunity was afforded and the government . . . did no more than offer the opportunity, then the defendant is not a victim of entrapment.  If, on the other hand, . . . the evidence . . . should leave you with a reasonable doubt . . . then it is your duty to acquit. . . .").  Although in each of these cases the jury instruction on entrapment did not explicitly say the <u>government</u> had the burden of proving no entrapment, this was the clear import because the juries were told that they could not convict unless they were satisfied that the proof had established beyond a reasonable doubt that the defendant was not entrapped.

Unfortunately, even the kind of instruction offered in <u>Smegal</u>, <u>Martinez</u>, and <u>Gurule</u> is missing from the entrapment instruction here.  <u>See</u> <u>Smegal</u>, 772 F.2d at 660; <u>Martinez</u>, 749 F.2d at 606; <u>Gurule</u>, 522 F.2d at 25.  Duran's jury was not told that it must find beyond a reasonable doubt that one or the other of the elements of entrapment had been disproved.  It was merely told that entrapment was a defense being asserted by the defendant, and it consisted of the elements of predisposition and inducement.  The district court gave no indication to the jury as to whether the burden of proof beyond a reasonable doubt lay on the side of the government proving predisposition (or lack of inducement) or on the side of the defendant proving no predisposition (and government inducement).  In the face of the failure to provide this kind of direction, a reasonable jury might conclude that

- 19 -

the burden lay with the defendant.  See Notaro v. United States, 363 F.2d 169, 175-76 (9th Cir. 1966) (striking down an entrapment instruction because it created confusion for the jury as to whether the defendant had the burden of proof).  Indeed, Jury Query No. 5 suggests that at least one juror in Duran's case had come to the erroneous interpretation that Duran carried the burden of proof on the entrapment defense.  (See Jury Query No. 5.)  It is clear, however, that the law of entrapment requires the government, not the defendant, to prove predisposition.  See Jacobson, 503 U.S. at 549, Cecil, 96 F.3d at 1348.

B.

The second prong of the Olano/Johnson plain error analysis requires us to canvass the case law to determine whether the district court's error -- in failing to inform the jury that before it could convict Duran, it must find beyond a reasonable doubt that Duran was not entrapped -- was "clear" or "obvious."  The government concedes that the case law demonstrates the district court's error was clear and obvious.

In virtually all of this circuit's reported decisions considering challenges to jury instructions on entrapment where we have upheld the instructions, the instructions stated that the jury could not convict unless it found beyond a reasonable doubt that the defendant was predisposed to commit the crime and that the government did not induce or persuade the defendant to commit the offense.

See Cecil, 96 F.3d at 1346 (upholding jury instruction that included both a statement that the government has the burden of proving beyond a reasonable doubt that the defendant was not entrapped, and a statement that the government must prove beyond a reasonable doubt that the defendant was predisposed to commit the criminal act); United States v. Rivera, 778 F.2d 591, 601-02 (10th Cir. 1985) (upholding a jury instruction that included only a statement that jury must find predisposition beyond a reasonable doubt); Smegal, 772 F.2d at 660 (same); Martinez, 749 F.2d at 606 (same); Gurule, 522 F.2d at 25 (finding that the legal requirement that the government bear the burden of proving the defendant was not entrapped is "clearly implicit" when the entrapment instruction informs the jury not to convict if there is a reasonable doubt as to the defendant's predisposition); Garcia v. United States, 373 F.2d 806, 809 (10th Cir. 1967) (noting that an entrapment instruction should inform the jury that "the burden is upon the government to prove beyond a reasonable doubt that its agents did not entrap the accused . . .").

The seminal case on the issue of entrapment jury instructions was decided by the Ninth Circuit more than thirty years ago, where the court held that it was reversible error for an entrapment instruction to suggest that the defendant has the burden of proving the elements of the entrapment defense. See Notaro, 363 F.2d at 175-76. As the court explained, even a general burden of proof instruction

elsewhere in the jury instructions is insufficient to save the instructions as a whole if the specific entrapment instruction has given an incorrect impression that the defendant bears the burden of proving entrapment. See id. at 176 (quoted in Corrigan, 548 F.2d at 882). We note that other cases have made it clear that the government bears the burden of disproving a claim of entrapment. See United States v. Sterner, 23 F.3d 250, 252 (9th Cir. 1994) ("A proper entrapment instruction informs the jury that the government has to prove beyond a reasonable doubt the defendant's predisposition 'to violate the law before the [g]overnment intervened.'") (quoting Jacobson, 503 U.S. at 549 n.2), disapproved on other grounds, United States v. Keys, 95 F.3d 874, 879-80 n.6 (9th Cir. 1996) (en banc); United States v. Whoie, 925 F.2d 1481, 1486 (D.C. Cir. 1991) ("Juries are already told that they must acquit a defendant unless they find predisposition beyond a reasonable doubt. They should not have to guess that it is the government that must prove it."); El-Gawli, 837 F.2d at 147 ("In this circuit, the government must bear the entire burden of disproving entrapment beyond a reasonable doubt."); Virgin Islands v. Cruz, 478 F.2d 712, 717-18 (3d Cir. 1973) (holding that it is error, if not plain error, to fail to inform a jury that it must find beyond a reasonable doubt that the defendant was not entrapped).

## C.

The third prong of the Olano/Johnson plain error analysis requires an examination of the impact of the district court's instructional error on the outcome of the case, i.e., whether the error affected Duran's "substantial rights." See Olano, 507 U.S. at 734. When a district court gives a legally incorrect jury instruction on the principal elements of the offense or a defense, we often have concluded that the legal error affected the outcome of the trial proceedings. See, e.g., Brown, 996 F.2d at 1053. But see DeSantiago-Flores, 107 F.3d at 1481 (finding no prejudice despite plain error in a jury instruction because the jury's actual verdict necessarily included findings on all the required elements that would have been given in a correct jury instruction). In Duran's case, however, another factor demonstrates that the district court's error did indeed affect Duran's substantial rights: the apparent jury confusion over burden of proof on entrapment. Jury Query No. 5 indicates that at least one member of the jury was unclear as to how the government's burden of proof on the elements of the cocaine possession charge intersected with the defendant's claim of entrapment. (See Jury Query No. 5.) This query strongly suggests that the confusion over the burden of proof on the entrapment defense affected Duran's substantial rights. As the government concedes, the possibility of prejudice in Duran's case is simply "too great to allow the conviction to stand." See Corrigan, 548 F.2d at 884.

- 23 -

D.

The fourth prong of the <u>Olano</u>/<u>Johnson</u> analysis asks if the "fairness, integrity, or public reputation" of Duran's trial was "seriously affected" by the district court's instructional error on the entrapment defense. <u>See</u> <u>Olano</u>, 507 U.S. at 736. As the Supreme Court noted, an error may create this threat to the integrity of the judicial proceedings "independent of the defendant's innocence." <u>Id.</u> at 736-37.

In Duran's case, the government again has conceded, and we agree, that the district court's plain error seriously affected the fairness, integrity, and public reputation of Duran's trial because it allowed the jury to reach a conviction without requiring the government to prove all of the elements in the case beyond a reasonable doubt. In light of the revered status of the beyond-a-reasonable-doubt standard in our criminal jurisprudence, a jury instruction that allows a conviction where one important element may not have been found against the defendant by such a standard cannot be overlooked. <u>See</u> <u>Corrigan</u>, 548 F.2d at 883-84. Thus, because of the district court's plain error in the jury instructions, taken as a whole, we conclude that a remand for a new trial is necessary.

As a secondary claim of plain error in the jury instructions, Duran also challenges the district court's responses to the jury's queries concerning the legal definition of agency in the context of an entrapment defense. (See Jury Queries Nos. 2 & 4.) The government contends that any error in the district court's responses was invited by Duran when he agreed to those responses. The record indicates that Duran's counsel agreed to the court's responses only after arguing unsuccessfully for more extensive responses that would have explained the legal scope of agency with respect to entrapment. However, the fact remains that he agreed to the responses by the court, and thus, we can reverse only for plain error.

Nevertheless, when a jury indicates through its queries that it is confused as to important legal standards in a case, particularly where there is an apparent basis for the confusion, it is plain error for the district court not to clarify that confusion. See United States v. Zimmerman, 943 F.2d 1204, 1213-14 (10th Cir. 1991); United States v. March, 999 F.2d 456, 462-63 (10th Cir. 1993) (finding that a trial court's vague response to a jury query was erroneous under Zimmerman, but concluding that the error was harmless in light of other evidence of guilt); see also United States v. Warren, 984 F.2d 325, 330-31 (9th Cir. 1993) (reversing defendant's conviction because the trial court's responses to jury queries simply reiterated previous jury instructions without directly resolving the

jury's apparent confusion); United States v. Nunez, 889 F.2d 1564, 1568 (6th Cir. 1989) ("When a jury indicates confusion about an important legal issue, it is not sufficient for the court to rely on more general statements in its prior charge. 'A conviction ought not to rest on an equivocal direction to the jury on a basic issue.'") (quoting Bollenbach v. United States, 326 U.S. 607, 613 (1946)). As we indicated in Zimmerman, vague answers or mere exhortations to continue deliberating are plainly inadequate when the jury has demonstrated its misunderstanding of relevant legal principles: "'When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy.'" Zimmerman, 943 F.2d at 1213 (quoting Bollenbach, 326 U.S. at 612-13). Under the Zimmerman rule, a trial court must clarify jury confusion when jury questions indicate a possibility that a conviction would be "based on an incorrect legal basis." Id. at 1214.

In Duran's case, the jury seemed to have more than a little difficulty with the references to a "government agent" in the court's entrapment instruction. (See Instr. No. 32A.) The initial jury instruction had referred to a government "agent" in the singular, despite evidence during the trial that there were at least three government agents involved in the transactions with Duran -- Agent Evans, Officer Ika, and Needham. Seeing this contradiction between the evidence and the jury instruction, the jury asked the not surprising question of whether the term

- 26 -

"agent" in the entrapment instruction could refer to Needham, or whether it only could refer to Agent Evans or Officer Ika. (See Jury Query No. 2.) When the jury reconvened the next morning, the court responded merely by instructing the jury that the issue was a question of fact for the jury to decide. (See Court's Response No. 3.) The jury demonstrated just how unhelpful the court's answer was by sending out a new question asking the court to indicate whether the term "agent" in the entrapment instruction referred specifically to Agent Evans. (See Jury Query No. 4.) The court responded by telling the jury that the term "agent" "refers to any agent doing work for the United States in matters relating to this case." (See Court's Response No. 4.) Not only does the court's response include the confusing use of the very term to be defined in the definition, but the definition itself can be read to mean that an "agent" is only someone working for the government, i.e., a government employee.

We believe that the jury's repeated queries indicated clear confusion over the legal definition of agency within the context of Duran's entrapment defense. We also believe that the court's responses to the jury on the agency questions violated the Zimmerman rule because the responses could have allowed the jury to conclude that Needham was not acting as a government agent in his dealings with Duran. If the jury concluded that Needham could not be a government agent, then the heart of Duran's entrapment defense would collapse because almost all

- 27 -

of his contentions of government inducement involved conduct by Needham.

Thus, we find plain error in this regard as well.[8]

III.

Besides his claims of instructional errors with respect to the entrapment

defense, Duran also argues that as a matter of law he was entrapped, and as a

result he was entitled to a judgment of acquittal.[9] To support this contention,

Duran complains that the government failed to demonstrate he possessed a

predisposition to distribute cocaine before his contact with the government's paid

---

[8]The word "agent" is not self-defining. In a case such as this, where a defendant asserts an entrapment defense, and both government officials and a person acting as a government informant are involved, the district court should tender an instruction properly defining the word "agent." Thus, we suggest that if Duran is tried again and raises the entrapment defense, the district court define the word "agent" in the entrapment charge. See United States v. Attell, 655 F.2d 703, 707 (5th Cir., Unit A 1981); see also, Smegal, 772 F.2d at 661 (favoring an instruction defining the word "agent" in an entrapment charge where both a DEA agent and government informant were involved).

[9]Normally, we would review the denial of a motion for judgment of acquittal de novo, applying the same standard applicable in the district court. See United States v. Lampley, __ F.3d __, 1997 WL 644459, at *9 (10th Cir. Oct. 20, 1997). In Duran's case, however, the record on appeal contains no indication that Duran ever made a motion for acquittal under Fed. R. Crim. P. 29. Thus, our review of his claim here generally would be limited to a search for plain error. See Fed. R. Crim. P. 52(b). However, review under the plain error standard in this case and a review of sufficiency of the evidence usually amount to largely the same exercise. See United States v. Bowie, 892 F.2d 1494, 1496-97 (10th Cir. 1990). As a result, we will treat Duran's entrapment-as-a-matter-of-law claim as though it were a challenge to the sufficiency of the evidence.

informant, Douglas Needham. Thus, Duran's claim of entrapment as a matter of law focuses on the second element of an entrapment defense, where the inquiry concerns "whether the defendant was an 'unwary innocent' or an 'unwary criminal.'" United States v. Lampley, __ F.3d __, 1997 WL 644459, at *9 (10th Cir. Oct. 20, 1997) (quoting Sherman v. United States, 356 U.S. 369, 372 (1958)). Predisposition to commit a criminal act may be shown by evidence of similar prior illegal acts or it may be "inferred from 'defendant's desire for profit, his eagerness to participate in the transaction, his ready response to the government's inducement offer, or his demonstrated knowledge or experience in the criminal activity. . . .'" United States v. Dozal-Bencomo, 952 F.2d 1246, 1251 (10th Cir. 1991) (quoting United States v. Fadel, 844 F.2d 1425, 1433 (10th Cir. 1988)).

A claim of entrapment as a matter of law requires the defendant to show that "'there is undisputed testimony which shows conclusively and unmistakably that an otherwise innocent person was induced to commit the act.'" United States v. Madrigal, 43 F.3d 1367, 1369 (10th Cir. 1994) (quoting Fadel, 844 F.2d at 1434). We review the evidence in the light most favorable to the government, drawing all reasonable inferences in favor of the prosecution. See id. A defendant is not entitled to a claim of entrapment as a matter of law if the government has presented any evidence to contradict the entrapment defense. See Lampley, 1997 WL 644459, at *9-*10.

In Duran's case, the government presented evidence that contradicts Duran's claim that he was not predisposed to distribute cocaine. According to FBI Agent Evans, Duran claimed he had been a drug dealer for six years, and that drug dealing allowed him to buy a new van with cash, as well as homes in Utah, California, and Mexico. The government's paid informant, Needham, also testified that Duran bragged about being able to obtain drugs. Furthermore, Duran demonstrated his familiarity with the methods of distributing cocaine during the three cocaine deals prior to the one-kilogram transaction that resulted in his arrest. Finally, during this last transaction, Duran increased the price of the kilogram and demanded an additional supply of cocaine for himself, ostensibly increasing his profit in the deal. All of this evidence is sufficient to contradict Duran's claim that he was not predisposed to commit the criminal acts in this case.

This evidence also is sufficient to support the jury's conviction. The test for reviewing a sufficiency-of-the-evidence claim is to view the evidence in the light most favorable to the government and ask whether the evidence, and the reasonable inferences to be drawn from it, would allow a reasonable jury to conclude beyond a reasonable doubt that the defendant was not entrapped. See Madrigal, 43 F.3d at 1370. Resolving all credibility issues in favor of the

government, we believe a reasonable jury could have found beyond a reasonable doubt that Duran was not entrapped.

IV.

Finally, we have reviewed Duran's contention that the government agents in this case committed outrageous conduct requiring reversal of his conviction, and we find the claim to be meritless. See United States v. Pedraza, 27 F.3d 1515, 1521-22 (10th Cir. 1994).

In conclusion, because of the plain error in the district court's jury instructions on the defense of entrapment and the plain error in refusing to clarify the jury confusion over the legal definition of agent, we REVERSE and REMAND this case for a new trial.