**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 12 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ERIC WAYNE DOTSON,

    Defendant-Appellant.

No. 99-6436
(D.C. No. 98-CR-203-A)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge, **HENRY**, and **LUCERO**, Circuit Judges.

This is a direct appeal from defendant-appellant Eric Wayne Dotson's

conviction for robbing a jewelry store in violation of the Hobbs Anti-

Racketeering Act of 1934, 18 U.S.C. § 1951 ("Hobbs Act"), carrying a firearm

during a crime of violence in violation of 18 U.S.C. § 924(c)(1), and transporting

at least $5,000 worth of stolen diamonds in interstate commerce in violation of 18

U.S.C. § 2314. Dotson was sentenced to serve 322 months imprisonment as a

career offender under U.S.S.G. § 4B1.1. He was also ordered to pay nearly

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

$125,000 in restitution to the jewelry store and $3,500 to the employee he robbed. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

**I**

Defendant-appellant confessed to robbing Gordon's Jewelers ("Gordon's") in Oklahoma City, Oklahoma on March 25, 1998. Dotson stole twenty-two solitaire diamond rings and five loose stones worth $145,245. Among the rings he stole were a 1.50-carat round certified diamond, a 1.64-carat round diamond, and a 1.01-carat pear-shaped diamond. Dotson denies having used a firearm during the robbery.

On March 27, 1998, two days after the robbery of Gordon's, Dotson sold some diamonds to Astor Jewelers ("Astor") in Memphis, Tennessee. He sold Astor three loose stones (not rings): a 1.50-carat round diamond, a 1.65-carat round diamond, and a 1.01-carat pear-shaped diamond.

A federal public defender was appointed to assist Dotson in his defense. At a pretrial hearing, Dotson asked to proceed pro se. Although the court advised him of his Sixth Amendment right to counsel and of the value and experience of appointed counsel, Dotson refused assistance citing his previous experiences with self-representation.

In this appeal, Dotson challenges the sufficiency of the court's inquiry into his knowing, intelligent waiver of the right to counsel, the court's response to a

question from the jurors, the sufficiency of the evidence subjecting him to liability for interstate transportation of stolen goods, and the jury instruction on the Hobbs Act charge. Dotson also challenges the award of restitution under 18 U.S.C. § 3663A on the ground that lost income and medical expenses cannot be awarded absent "bodily injury" to the victim.

## II

Dotson argues the court did not sufficiently explore whether his request to waive counsel was made knowingly and intelligently. [1] We review de novo whether a waiver of counsel was voluntary, knowing and intelligent; we review for clear error the district court's findings of fact. See United States v. Taylor, 113 F.3d 1136, 1140 (10th Cir. 1997); United States v. Mackovich, 209 F.3d 1227, 1236 (10th Cir.), cert. denied sub nom. Mackovich v. United States, 121 S. Ct. 248 (2000).

The Sixth Amendment provides an accused both the right to counsel and the right to conduct one's own defense. See Faretta v. California, 422 U.S. 806, 821 (1975). In order to be valid, a waiver of counsel must be made voluntarily, knowingly, and intelligently. See Taylor, 113 F.3d at 1140. When conducting an inquiry into the sufficiency of an accused's waiver of counsel, a court must look to "the entire circumstances of the case, including the defendant's age, education,

---

[1] Dotson admits that his waiver of counsel was voluntary.

. . . experience with criminal trials and [his] background, experience, and conduct." Id. (citing United States v. Padilla, 819 F.2d 952, 958 (10th Cir. 1987)). The court is required to ensure the defendant is actually aware of the "dangers and disadvantages" involved in proceeding pro se. Faretta, 422 U.S. at 835.

In this appeal, Dotson argues he did not have "a sense of the magnitude of the undertaking and the inherent hazards of self-representation." (Appellant's Br. at 15 (quoting Taylor, 113 F.3d at 1141).) He argues the court's failure to ask him his reasons for proceeding pro se and to inquire into whether he actually understood the consequences of his decision rendered his waiver constitutionally insufficient.

Dotson's argument is inadequate. Not only did the judge inform him of his right to counsel and ask him multiple times whether he was certain he wanted to waive that right, but the judge also plainly informed him he would be better off with counsel. "[M]y free advice is that a trained and experienced lawyer could defend you better than you could defend yourself. . . . [I]t's probably not very wise on your part to represent yourself here because a trial is a technical procedure . . . ." (2 R. at 10-11.) The judge explained to Dotson the potential sentences he faced and assessed that he was well-informed, experienced and intelligent. We therefore affirm the district court's decision to allow Dotson to

waive counsel and deny Dotson's request for a reversal and new trial on waiver of counsel grounds.

## III

When a jury instruction is challenged for the first time on appeal, this Court reviews for plain error. See United States v. Duran, 133 F.3d 1324, 1330 (10th Cir. 1998); Fed. R. Crim. P. 52(b). In order to establish plain error, an appellant must show (1) an error (2) that is plain or contrary to clearly established law and (3) that affects substantial rights. See Duran, 133 F.3d at 1330. Once these three conditions are met, this Court may reverse only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (quoting Johnson v. United States, 520 U.S. 461, 466 (1997) (quoting United States v. Olano, 507 U.S. 725, 732 (1993))).

Although Dotson confessed to robbing Gordon's, he denied using a firearm during the robbery. He did, however, admit that he pretended to have one. The clerk from whom Dotson took the jewelry, Dee Violette, was uncertain about his possession and use of a gun. Prior to trial, she stated the robber had not drawn a weapon. Later she said she thought he probably had possessed a real gun.

Dotson was convicted under 18 U.S.C. § 924(c)(1)(A), which proscribes using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime." Because of the apparent confusion as to whether Dotson

was carrying a real gun during the robbery or was only pretending to carry a gun, the jury sent a question to the court asking, "Does it make a difference if we believe the defendant only pretended to have a gun rather than actually had one?" (6 R. at 660-664.)   The court responded by saying, "Yes.  Mr. Dotson may be found guilty of Count Two only if all three elements of that offense are proved beyond [a] reasonable doubt.  See, in that respect, Instruction Number 24." (    Id. at 664.)  Jury instruction 24 stated the essential elements of a § 924(c)(1) violation: "defendant committed the crime of interference with commerce by robbery . . . ; defendant knowingly used or carried a firearm;" and "defendant used or carried the firearm during and in relation to the crime."    (1 R. Doc. 31.)

Dotson claims that the court's response to the jury's question concerning whether the alleged gun was real was insufficient to clear up the jury's confusion. He argues the instruction itself was deficient because it did not define what a "firearm" is for purposes of § 924(c)(1).  Citing     United States v. Warren   , 984 F.2d 325, 330-31 (9th Cir. 1993), he further argues that simply reiterating a previous general jury instruction will not suffice to resolve the jury's confusion.

Only "particularly egregious" jury instruction errors should be corrected under plain error review.    See United States v. Young   , 470 U.S. 1, 15 (1985) (quoting  United States v. Frady   , 456 U.S. 152, 163 (1982)).  An error arises if, "considering the instructions as a whole, the jury has been misled."        Duran , 133

-6-

F.3d at 1330. In the instant case, we conclude the court's answer to the jury's question was neither erroneous nor misleading. The court's answer, "yes," concisely informed the jury that they were required to find Dotson was carrying a real gun in order to convict him of a § 924(c) violation. The court's reference to the prior jury instruction informed them that they were also required to find Dotson met the three elements of a § 924(c) violation. The fact that the jury did not ask the court any further questions is indicative of the conclusiveness of the court's answer. Cf. Duran, 133 F.3d at 1328-29 (noting that the jury asked the judge repeated questions and reversing on the improper jury instruction claim).

**IV**

Dotson argues the evidence at trial was insufficient to prove he transported stolen goods between states in violation of 18 U.S.C. § 2314. When reviewing a challenge to the sufficiency of the evidence, this Court considers, in the light most favorable to the government, both the direct and circumstantial evidence together with any reasonable inferences that can be drawn therefrom and decides whether a reasonable jury could find the defendant guilty beyond a reasonable doubt. See United States v. Floyd, 81 F.3d 1517, 1525 (10th Cir. 1996).

After carefully reviewing the record, we conclude a reasonable jury could have found the defendant guilty beyond a reasonable doubt of transporting stolen goods between states. The undisputed evidence shows Dotson sold diamonds to

-7-

Astor of essentially the same size, quality, and shape of those taken from Gordon's just two days after the robbery of Gordon's. Dotson asserts that although the diamonds sold to Astor were stolen, they were stolen from somewhere other than Gordon's–namely, Winchester Pawn Shop. He points out that the diamonds sold to Astor were not mounted on ring settings. Yet in his own brief he admits that diamond rings can be easily removed from their mountings without affecting the diamonds' quality. The evidence thus gave rise to a reasonable inference that the diamonds were in fact those stolen from Gordon's such that a jury could find Dotson guilty beyond a reasonable doubt. See United States v. Kim, 105 F.3d 1579, 1584 (10th Cir. 1997) ("The Government may prove the existence of stolen goods by demonstrating that the recovered material is similar to the stolen items." (citation omitted)).

## V

Next, Dotson argues the district court improperly instructed the jury that they were only required to find a de minimis effect on interstate commerce to find Dotson in violation of the Hobbs Act. Dotson did not object to the court's instruction at the time of trial and he acknowledges in his brief that this Circuit has upheld instructions and convictions under the Hobbs Act based on only a de minimis showing of effect on interstate commerce. See, e.g., United States v. Nguyen, 155 F.3d 1219, 1224 (10th Cir. 1998); United States v. Bolton, 68 F.3d

-8-

396, 399 (10th Cir. 1995). However, in light of the Supreme Court's decision in Jones v. United States, 526 U.S. 227 (1999), Dotson urges us to depart from our precedent and hold either that "Congress lacks power under the Commerce Clause to regulate robbery, a noneconomic activity" or that the jurisdictional element of the Hobbs Act requires proof of a "substantial effect on interstate commerce." (Appellant's Reply Br. at 7.)

In the period between briefing and oral argument, this Court decided United States v. Malone, 222 F.3d 1286 (10th Cir. Aug. 23, 2000), and addressed precisely the arguments now made by Dotson. In Malone, we reviewed whether the Supreme Court's decision in Jones supported the argument that more than a de minimis showing of effect on interstate commerce is required to prove a Hobbs Act violation. See id. at 1295. The Hobbs Act states, in relevant part, "[W]hoever in any way or degree . . . affects commerce or the movement of any article or commodity in commerce . . . by robbery . . . shall be fined . . . or imprisoned . . . ." 18 U.S.C. § 1951(a). We concluded the Hobbs Act expressly regulates economic activity and that Jones does not impact our prior Hobbs Act jurisprudence. Malone, 222 F.3d at 1295. Accordingly, we hold the district court did not err in instructing the jury that only a de minimis effect on interstate commerce is necessary to meet the requirements of the Hobbs Act.

Dotson's final argument on appeal is that the district court's restitution order was illegal under 18 U.S.C. § 3663A because it compensated a victim for lost income and medical expenses for mental suffering even though the victim did not suffer bodily injury. Due to Dotson's failure to object at sentencing, we review for plain error whether an award of restitution was properly ordered. See United States v. Coleman, 9 F.3d 1480, 1486 n.4 (10th Cir. 1993).

The Victim Witness and Protection Act of 1982, Pub. L. No. 97-291, 96 Stat. 1248 ("VWPA"), permits a court to order restitution to be paid to any victim of the offense. See 18 U.S.C. §§ 3663, 3663A. Section 3663(b)(2) states that

> in the case of an offense resulting in bodily injury to a victim–[defendant shall]
>
> (A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care . . .
>
> (B) pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and
>
> (C) reimburse the victim for income lost by such victim as a result of such offense . . . .

(emphasis added).

Dotson does not argue the offense he committed cannot support an award of restitution under VWPA. Rather, he argues the Act only authorizes lost income and medical expenses for mental suffering if the offense also resulted in bodily

injury to the victim.  Indeed, it appears that every federal court to consider the issue has determined restitution cannot be ordered under VWPA for lost income and emotional damages unless the victim suffered bodily, i.e., physical, harm. See, e.g. , United States v. Dayea , 73 F.3d 229, 231 (9th Cir. 1995) ; United States v. Sharp , 927 F.2d 170, 174 (4th Cir. 1991).

We decline to reach the issue of whether an award of restitution for lost income and medical expenses can be predicated on a victim's mental injuries alone.  Although there is an argument to be made that the court's interpretation of VWPA may have been erroneous, we do not conclude it constituted plain error so as to have "seriously affect[ed] the fairness, integrity or public reputation of [these] judicial proceedings."  Olano , 507 U.S. at 736;  see also  Duran , 133 F.3d at 1330.  At best, the statute is ambiguous with regard to the scope of "bodily injury" and the law is by no means clearly established; thus, the district court's award of restitution was not plainly erroneous.

Moreover, the results reached in other Circuits interpreting the scope of the phrase "bodily injury" in § 3663(b)(2) are by no means conclusive.  Federal law deems mental injury to constitute bodily injury in other contexts.  See, e.g. , 18 U.S.C. § 1365(g)(1)(B)(3) (defining the phrase "bodily injury" to include "impairment of the function of a bodily member, organ, or mental faculty"); U.S.S.G. § 1B1.1, comment (j) (defining "serious bodily injury" to include

-11-

protracted impairment of a "function of a bodily member, organ, or mental faculty").  Moreover, § 3663(b)(2) uses the term "bodily" while § 3663(b)(2)(A) enumerates "physical, psychiatric, and psychological care" separately, indicating that perhaps "bodily injury" is a holistic phrase referring to all aspects of the body, physical and psychological.

## VII

The judgment of the district court is **AFFIRMED** .

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge